LYMAN LORING BROOKS vs. ERNEST T. GREGORY.

Suffolk.   January 11, 1933. — February 13, 1934.

Present: RUGG, C.J., PIERCE, DONAHUE, & LUMMUS, JJ.

Broker, Commission. Evidence, Competency, Of good faith, Admissions. Practice, Civil, Amendment.

At the trial of an action of contract, there was evidence, substantially undisputed, that the defendant, in September, 1928, requested the plaintiff, who was not a broker, to procure the sale of property of the defendant to a certain third person and agreed to pay the plaintiff a certain commission if the plaintiff should succeed "at this time," "or if through other negotiations between . . . [the third person and the defendant] at this time the property is sold," the agreement to remain in effect for two weeks; that the plaintiff thereupon communicated with the third person, who replied in November, 1928, that the price quoted was too high; that thereafter the plaintiff and the defendant did nothing about selling the property until February, 1930, when the defendant requested the plaintiff to take the matter up again and the plaintiff replied that he would be glad to do so; that the plaintiff thereupon arranged a meeting between the defendant and the third person, who negotiated at various times for several months but did not come to an agreement; that early in the spring of 1930, the defendant expressed an intention to pay the plaintiff a commission in the event of a sale; that in June, 1930, the defendant notified the plaintiff by a letter that he was "sorry the original terms of my negotiation for the sale of my property fell through," and that he was obliged to place the property in the hands of a "regular broker"; that the defendant then placed the property in a broker's hands; that in September, 1930, the plaintiff having done nothing further, the property was sold to the third person after negotiations between the de-

fendant, the third person and the broker; and that, shortly after the sale, the defendant paid the plaintiff a certain sum, which the plaintiff said he would take "on account." The plaintiff sought to recover the balance of the commission originally agreed upon. *Held*, that

(1) A finding was not warranted that the plaintiff was the efficient cause of the sale made;

(2) There was no merit in a contention by the plaintiff that he and the defendant in February, 1930, made a contract embodying that portion of the contract of September, 1928, which provided for the payment of compensation to the plaintiff in the event that a sale were made through the defendant's efforts but rejecting the limitation of time contained in the previous contract;

(3) An inference was warranted that the parties agreed in February, 1930, that the plaintiff should be entitled to compensation if he used his efforts to make a sale and those efforts were successful;

(4) The fact, that early in the spring of 1930 the defendant expressed an intention to pay the plaintiff a commission in the event of a sale, was reasonably consistent with an agreement to pay a commission only if the plaintiff's efforts to make a sale were successful;

(5) In the absence of bad faith, the defendant was entitled to revoke the plaintiff's agency at any time before the plaintiff procured a sale;

(6) The defendant's letter to the plaintiff in June, 1930, was a revocation of the plaintiff's authority;

(7) A finding was not warranted that the revocation was done in bad faith;

(8) The payment to the plaintiff after the sale did not constitute an admission by the defendant that there was some other agreement between the plaintiff and the defendant than that the plaintiff was to be compensated only if his efforts were successful, and did not affect the conclusion that the plaintiff's authority had been revoked;

(9) The plaintiff was not entitled to recover;

(10) Evidence, that the defendant paid a certain commission to the broker employed by him, was competent, not as proof of the agreement made by the plaintiff and the defendant or on the question of its construction, but on the question of the defendant's good faith in revoking the plaintiff's authority.

No abuse of discretion appeared in the circumstances in the denial of a motion for leave to amend the declaration in an action; and an exception to the denial was overruled.

CONTRACT. Writ dated December 1, 1930.

The action was tried in the Superior Court before *Sisk*, J. Material evidence is stated in the opinion. At the close of the evidence, the plaintiff filed a motion for leave to file a substitute declaration. The motion was allowed as to the second count in the substitute declaration, and denied as to the first count. The first count sought to be substituted was as follows:

"The plaintiff says that on or about September 29, 1928, the defendant employed the plaintiff to use his efforts to attempt to sell defendant's property in Framingham, Massachusetts, to one Henry Ford, and agreed that if the plaintiff succeeded in selling the defendant's property, or if through other negotiations at this time between the defendant and said Henry Ford, the defendant sold the property to said Ford that the defendant would pay the plaintiff a commission of six per cent upon the agreed purchase price of said property as compensation for the plaintiff's services; that said agreement was to remain in effect for two weeks from said date but could be renewed from time to time, as mutually agreed upon; that thereafter during the month of February, 1930, said agreement was renewed between the defendant and the plaintiff, and the plaintiff did use efforts to attempt to sell the defendant's property to said Ford, and that as a result of the plaintiff's efforts the defendant negotiated with one Boyer, as agent and representative of said Henry Ford, whereby the defendant sold his said property on or about September 16, 1930, to said Henry Ford for the sum of $75,000, of which $60,000 was paid for the defendant's said real estate in Framingham, and $15,000 was paid for certain personal property on said estate; Wherefore, the plaintiff says that the defendant owes him $4,500 as compensation for his services, upon which the defendant has paid him the sum of $500 on or about September 18, 1930, and now owes the plaintiff $4,000."

The first count of the original declaration and the substitute second count are described in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*W. R. Bigelow & V. J. Loring,* for the plaintiff.

*J. H. Sherburne, Jr.,* (*B. Aldrich* with him,) for the defendant.

DONAHUE, J.    The first count in the plaintiff's declaration alleges that on or about September 29, 1928, the defendant employed him "to interest one Henry Ford in the purchase of defendant's real estate" and agreed to pay

him a commission of six per cent upon the selling price; that the plaintiff did interest said Ford in said real estate; that the defendant on or about September 16, 1930, sold said real estate to Ford for $100,000; that the sale and conveyance were brought about by the plaintiff and that the defendant owes him $5,500, the balance of the commission after deducting a credit of $500. The second count in the substitute declaration is on an account annexed for "the fair value of the plaintiff's services in assisting the defendant in negotiations for the sale of his property" and seeks recovery of six per cent of $60,000, the sale price of the real estate, and of $15,000, the sale price of certain personal property, less a credit of $500. At the close of the evidence upon the defendant's motion a verdict was directed for him to which the plaintiff duly excepted.

There was little conflict in the evidence. The defendant acquired his property in 1919 and by 1926 it had come to be surrounded by properties which had been purchased by Henry Ford whom the plaintiff had interested in the purchase of the Wayside Inn and other properties in the vicinity of the defendant's farm. In 1926, the defendant refused an offer of $75,000 for his property made by an agent of Ford. The defendant had known the plaintiff for a long time. The plaintiff lived in the neighborhood and had once owned and lived on the property which the defendant had later purchased. So far as the record shows he was not a real estate broker or engaged in the real estate business. In September, 1928, the plaintiff was asked by the defendant to offer the property for sale to Ford for $150,000. After some discussion they made the agreement expressed in a letter from the defendant to the plaintiff dated September 29, 1928, which read as follows: "I am asking you to use your efforts to attempt to sell my property in Framingham to Mr. Henry Ford. I agree that if you succeed in selling this property at this time or if through other negotiations between Mr. Ford and myself at this time the property is sold to Mr. Henry Ford that I will pay you the customary brokerage in real estate transactions which you state is 6% upon the agreed purchase price as compensa-

tion for your services.  Inasmuch as I hold myself free to
make other arrangements than the foregoing this under-
standing will remain in effect for two weeks from this date
and can be renewed from time to time as mutually agreed
upon."  The plaintiff then wrote a letter to Ford asking if
he would be interested in buying the place, receiving the
reply from the latter's secretary that before submitting the
plaintiff's letter to his employer he desired further informa-
tion as to the price.  The plaintiff at the direction of the
defendant then wrote to the secretary submitting an offer to
sell for $150,000 and received the reply from the secretary
dated November 12, 1928, that the valuation put upon the
property was entirely too high.  There is no dispute that
thereafterwards nothing was said or done either by plain-
tiff or by defendant with respect to selling the property
until fifteen months later, in February, 1930.  In that
month the defendant asked the plaintiff if Ford was ex-
pected soon at the Wayside Inn and said something about
taking up the trade again, that he would like to take up
again the matter of selling his property to Ford.  The
plaintiff said he would be glad to and would try to find
out if Ford was expected at the inn.  He wrote to Ford's
secretary and received a reply dated March 13 suggesting
that the defendant take up the matter of the sale with
one Boyer, who was Ford's manager at the Wayside Inn.
The plaintiff then arranged a meeting between Boyer and
the defendant.  In the following three months Boyer and
the defendant several times discussed the matter of the
sale of the defendant's property to Ford but came to no
agreement.  The defendant met the plaintiff from time to
time during this period and reported his discussions with
Boyer.  On June 26, the defendant called at the plaintiff's
office in Boston and told him that he was going to call on
Poole and Seabury, real estate brokers, and see if they
could sell his property to somebody else.  The plaintiff
asked the defendant why he did not go out to Detroit to
see Ford and according to the plaintiff's testimony the
defendant replied, "I will wait three or four weeks."  Later
in the day on June 26, or shortly afterwards, the plaintiff

received from the defendant the following letter bearing that date: "I am sorry the original terms of my negotiation for the sale of my property fell through. I tried myself to work it in such a way to include you but as that has become impossible I have been obliged to place it in the hands of a regular broker. I appreciate all you have done and I am sorry we were not able to pull it off together." The defendant in fact at about that time placed the property for sale in the hands of Poole and Seabury. The plaintiff after June 26 did nothing in regard to the sale of the property and between that date and late September when the property had been sold, the plaintiff and the defendant did not meet or have any communication. During the summer of 1930 one Weld of the firm of Poole and Seabury acting for the defendant discussed the matter of the sale of the property several times with Boyer as did the defendant. Boyer refused to give $125,000 which was the price asked. He made an offer of $55,000 to Weld and when that was rejected the matter for a time rested. During the summer Ford visited the property. The defendant went to Detroit in August and talked with Ford's secretary but there is nothing in the evidence to indicate that the visit played any part in reaching an agreement for sale. In early September in negotiations between Boyer and the defendant and his broker an agreement was reached for the sale of the real estate for $60,000 and certain personal property on the estate for $15,000. The conveyance was made on September 16. Later the defendant went to the plaintiff, told him the place was sold and handed him a check for $500. The testimony as to what was said is conflicting. According to the plaintiff's testimony he first said he would not accept it and then said he would take it on account and see his lawyer. The next day he cashed the check.

The evidence did not warrant the finding that the plaintiff was the efficient cause of the sale made in September, 1930. It is the plaintiff's contention that the jury was warranted in finding from the earlier agreement made in 1928, from the conduct of the parties and from the evidence as to the conversation had in February, 1930, that

a contract was then made upon which the plaintiff is entitled to recover compensation. It is not argued in his behalf that the jury was justified in finding that in February, 1930, the parties reaffirmed or adopted in its entirety the contract expressed in the letter of September, 1928. Even if the evidence did warrant a finding that the contract of 1928 was remade in precise terms in February, 1930, it would not avail the plaintiff. That contract not only set a limit of two weeks to its own existence but specifically provided that any sale of the property either by plaintiff or defendant to entitle the plaintiff to compensation must be made "at this time." The sale was in fact made seven months after February, 1930, and on the evidence could not be found to be a sale under the terms of such a contract.

In effect the plaintiff makes the contention that at the time of the conversation in February, 1930, a contract was made embodying that portion of the contract of September, 1928, which provided for the payment of compensation to the plaintiff in the event that a sale were made to Ford by the defendant's efforts but rejecting the elements of time limitation which are conspicuous in the earlier contract. The record does not afford the basis for such conclusion. In the undisputed testimony as to that conversation there appears no mention of the letter of September 29, 1928, or the contract there embodied, no discussions as to the terms of that contract or as to the adoption of portions of its provisions or the rejection of other portions, no reference to compensation of the plaintiff or to acts or events upon which compensation would depend. The fact that the defendant agreed in writing in 1928 to pay compensation to the plaintiff within a carefully limited time in the event that a sale should be effected by the defendant himself does not in the circumstances appearing justify the conclusion that in 1930 he agreed without any limitation as to time to pay a commission if a sale resulted from the defendant's efforts. Viewing all the evidence in the light most favorable to the plaintiff we are of the opinion that a finding would not be war-

ranted that such a contract as the plaintiff asserts was made in 1930.

The content of the brief conversation in February, 1930, does not disclose what the plaintiff must do in order to be entitled to compensation nor, in our opinion, may that be determined from subsequent conduct of the parties. In substance the defendant said that he would like to take up again the matter of selling his property to Ford; the plaintiff said he would be glad to and thereafter arranged a meeting between Ford's agent and the defendant. An intent of the parties in February, 1930, that the plaintiff should be compensated for doing something may on the evidence be found without difficulty, but what he was to do, unexpressed in the conversation and not inferable from the circumstances then or thereafter existing, is not so readily discernible. But in 1928 as well as in 1930 some acts of the nature of performance were required of the plaintiff. Since the evidence as to what happened in February, 1930, does not show what the parties intended should constitute performance by the plaintiff, we think the jury would have been warranted in having recourse to the requirements of performance on the part of the plaintiff under the earlier agreement. By the terms of the contract made in 1928 the plaintiff was required "to use . . . [his] efforts to attempt to sell" the defendant's property to Ford, and if he should "succeed in selling this property" he would become entitled to receive "the customary brokerage in real estate transactions" as compensation for his services. Under this branch of the earlier contract the plaintiff did not become entitled to compensation upon doing a specified act or certain designated things preliminary to or connected with the negotiation of a contract. In this respect the case of *Smith* v. *Plant*, 216 Mass. 91, is distinguishable on its facts.

Except that the contemplated purchaser was selected in advance by the seller, the contract of 1928 so far as concerns performance by the plaintiff did not differ essentially from the undertaking of a real estate broker under the ordinary relationship between such broker and his

principal. Since the 1930 agreement was silent and the 1928 agreement was specific as to the character of compensable efforts by the plaintiff we think the jury might reasonably have inferred that in 1930 the parties intended that the plaintiff should be entitled to compensation, as he would have been under the earlier contract, if he used his efforts to make a sale and those efforts were successful.

The defendant unless he acted in bad faith could revoke such a contract at any time while negotiations were still in progress and before the plaintiff accomplished the thing which entitled him to compensation. The delivery by the defendant to the plaintiff of the letter dated June 26, 1930, under the existing circumstances which were not materially in dispute, constituted an adequate revocation of the plaintiff's authority under any agreement between the parties which could be found then to exist unless the defendant acted in bad faith. Bad faith in such connection means a purpose on the part of the defendant to obtain without payment a profit from the plaintiff's exertions. *Elliott* v. *Kazajian,* 255 Mass. 459, 462, 464. On the view of the evidence most favorable to the plaintiff it could not be found that such was the defendant's purpose. There was no evidence warranting the finding that there was a simulation by the defendant that negotiations had been abandoned or deceit as to the stage of the progress of negotiations, *Delaney* v. *Doyle,* 267 Mass. 171, 177, or that the revocation came when the negotiations were "plainly and evidently approaching success," *Sibbald* v. *Bethlehem Iron Co.* 83 N. Y. 378, 384, cited in *Cadigan* v. *Crabtree,* 186 Mass. 7, 13, or that the plaintiff had performed all he had undertaken. *Zisman* v. *Spitz,* 259 Mass. 392. The present case is well within the usual rule that in the absence of bad faith on the part of a seller he may, without liability in damages, revoke the authority of an agent even though negotiations for a sale instituted, or participated in, by the agent are then in progress with a possible or even probable buyer. *Pagum* v. *White,* 259 Mass. 437, 439.

The plaintiff's exception to the admission of testimony that the defendant paid a commission to brokers employed

after the revocation and as to the amount of that commission must be overruled. While this evidence was not competent as proof of the agreement made by the parties or on its construction (*Rice* v. *Mayo*, 107 Mass. 550) it was pertinent on the question of the defendant's good faith in revoking the plaintiff's authority.

The fact that early in the spring of 1930, the defendant expressed to Ford's agent at a time when he was asking $125,000 for his property an intention to pay the plaintiff $5,000 in the event of a sale, is reasonably consistent with an agreement to pay a commission if the plaintiff's efforts to make a sale were successful. It does not afford the basis for a finding that some other contract with a different though indefinite stipulation as to compensation had been made. If the defendant's version of the incident occurring in September, 1930, were accepted, the conclusion might be drawn that the defendant was gratuitously rewarding unsuccessful attempts by the plaintiff to effect a sale. If the evidence consistent with that conclusion be disregarded there is little left but the fact that the defendant handed the plaintiff a check and the plaintiff said he would take it on account. We are of the opinion that this taken with all the evidence does not warrant the conclusion that the defendant admitted that there was some other agreement between the parties than that the plaintiff was to be compensated if his efforts were successful and that it does not affect the conclusion herein earlier reached on undisputed evidence that the plaintiff's authority under the contract which might have been found to have existed was revoked.

The plaintiff's exceptions to the denial of his motion for leave to amend the first count in the declaration must be overruled. It was addressed to the discretion of the trial judge and the record does not disclose reasons for reviewing his action. G. L. (Ter. Ed.) c. 231, §§ 51, 138. *Barlow* v. *Nelson*, 157 Mass. 395. *First National Bank of Chelsea* v. *Hall*, 170 Mass. 526. *Crowley* v. *Holdsworth*, 267 Mass. 13. *Knox* v. *Springfield*, 273 Mass. 109.

*Exceptions overruled.*