GEORGE D. KACAVAS *vs.* GEORGE DIAMOND & another.

Suffolk.     November 2, 1937. — April 24, 1939.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Broker*, Commission.

Neither a finding that a commission for procuring a purchaser of the defendant's business was earned, nor a finding that the defendant acted in bad faith to deprive the plaintiff of a commission, was warranted by evidence merely that, after the defendant had asked the plaintiff to obtain a customer, stating terms, the plaintiff brought a prospective customer to the defendant who stated terms to the customer that were not agreeable to him, and that the customer left saying he would "contact" the plaintiff later; that he did not do so and the plaintiff did nothing further; and that nearly two months later the same customer answered a "blind" advertisement by another broker, through whom he came to different terms with the defendant and purchased the property.

CONTRACT. Writ in the Municipal Court of the City of Boston dated July 21, 1936.

The case was heard by *Good*, J., who found for the plaintiff in the sum of $600 and interest.

*E. M. Dangel,* (*G. A. Goldstein* with him,) for the defendants.

*R. G. Wilson, Jr.,* for the plaintiff, submitted a brief.

DOLAN, J.   This is an action of contract to recover a commission for the sale of the defendants' business.   The judge found for the plaintiff, and the case now comes before us on the defendants' appeal from an order of the Appellate Division dismissing the report of the judge.

The evidence in its aspect most favorable to the plaintiff tends to show the following facts: The plaintiff was a cigar salesman who, in the course of business, went weekly to see the defendants, who were partners in the conduct of a certain business, called "Parkway Spa," at 4249 Washington Street in the Roslindale district of Boston.   In April, 1934, the defendant Diamond asked the plaintiff if he could obtain a customer to buy the business, stating that the price sought was $8,500, half cash, but that it would be shaded considerably if necessary, and that the plaintiff would be paid a "legitimate commission of 10%."   There was further conversation about the rental to such a customer of the store in which the business was conducted and concerning terms of a proposed lease.   Subsequently the plaintiff brought to the defendants two prospective purchasers with whom the defendants had some negotiations, but no sale was made to either of the two.   In "the latter part of 1934, the defendants offered to sell for $7,000 and said they would shade this price considerably."

On August 23, 1935, the plaintiff brought one Christou to the defendants' place of business.   Christou was interested in buying and had been told by the plaintiff that the price was $8,500 but that "the store could be bought for less."   The defendant Diamond, in the plaintiff's presence, informed Christou that the price was $8,500, half cash, and discussed a rental for $125 a month and an option. Christou replied "that the price was high," and Diamond said: "You cannot chop a tree with one cut."   Christou then stated that the price was too high but he would not say that he was not interested and that he would "contact" the plaintiff later.   The plaintiff did not see Christou

thereafter until October 20, 1935. On that day, while making his usual weekly call at the defendants' place of business, he found Christou in possession of the business and learned that he had purchased it.

Early in October, 1935, the defendants had listed the business for sale with a broker named Seminara and authorized him to advertise it for sale. Seminara inserted an advertisement in the Boston Daily Globe on October 16 and 18, 1935. The advertisement did not identify the property, and the terms of sale were stated as "price $7000.00, $2500.00 down; rent $135.00 month, 5 years lease." Christou, as a result of seeing this advertisement, communicated with Seminara, and after some talk offered to buy at a price of $6,000, half in cash. This offer was made known to the defendants by Seminara and accepted by them on October 16, 1935. On October 17 or 18 papers were passed, and an agreement was made that Christou was to be given a lease for three years at a rental of $145 a month with heat supplied, and with an option to extend the lease for two years. Seminara was paid a commission of $150. There was evidence that, before the sale was consummated, Christou reminded Diamond in the presence of Seminara that the plaintiff had taken him to the premises. Seminara's place of business was a "few doors" from the store involved and he ate there from time to time.

The judge denied the defendants' requests for rulings to the effect that the evidence did not warrant findings that "the defendants sold their property for the purpose of avoiding the payment of a commission to the plaintiff," or that they acted in bad faith to defraud the plaintiff of a commission, or that the plaintiff was "the predominating and efficient cause of the sale to the purchaser." Their request for a ruling that the "mere introduction by the plaintiff of the purchaser to the defendant [sic], does not warrant a finding that the plaintiff's efforts were the efficient cause of the sale actually made" was also refused. The judge filed the following memorandum of findings: "I find that the defendants knew that the purchaser was the plaintiff's customer; that the defendants never

terminated the plaintiff's employment; that the ultimate means of sale were employed in an endeavor to escape payment of the plaintiff's commission; that the defendants acted in bad faith."

The plaintiff was not entitled to his commission unless, before his authority was revoked, he produced a customer for the defendants' business who was ready, able and willing to purchase it on their terms, though it was not essential that a sale be consummated. *Herbert* v. *Jaffe*, 281 Mass. 202, 203. The "offer of the owner, in the absence of express words or plain indication to the contrary . . . will not be construed as an offer to pay a commission if the efforts of the broker shall be merely a contributing cause of its accomplishment." *John T. Burns & Sons Inc.* v. *Hands*, 283 Mass. 420, 422, and cases cited.

It is clear that at least until October 16, 1935, the plaintiff had not earned a commission, since at the interview with Diamond in August Christou stated that the price was too high, and that he was not willing to buy. Although he then said he would "contact" the plaintiff, he did not do so. The mere fact that the sale to Christou was completed through a second broker does not of itself bar a recovery by the plaintiff provided he was the real, predominating, efficient cause of the sale. *Delaney* v. *Doyle*, 267 Mass. 171, 177. The burden of proving that he was the efficient cause was on the plaintiff. *Rich* v. *Behrn*, 248 Mass. 450, 453. *Winchester* v. *Missin*, 278 Mass. 427, 428.

Many of the considerations to guide the determination of the question whether one was the efficient cause of a sale are stated in *Holton* v. *Shepard*, 291 Mass. 513. In that case, at page 516, it is said: "Where the sale is made to a customer produced by the broker, he may be found to be the efficient cause although not personally conducting all the negotiations leading to the transfer. . . . The terms proposed by the broker and those finally adopted in the sale need not be identical. . . . The broker may make out his case if he produces the customer to whom the sale is made without termination of his employment . . . and no new forces enter into the transaction which break the causal

relation between his efforts and the sale." Commonly the broker must show more than that he merely introduced the customer to the seller, or that he first interested the customer in the subject of the sale. The evidence must go far enough to justify a finding that the broker's "services were the efficient or effective means of bringing about the actual sale." *Whitcomb* v. *Bacon,* 170 Mass. 479, 481. *Palmer* v. *Cherney,* 270 Mass. 551, 555. *Glendon* v. *Pyne,* 275 Mass. 528, 530.

After the meeting at which the plaintiff introduced Christou to the defendants, and nothing came of that meeting, although the plaintiff knew that the defendants' asking price had been $1,500 less than the figure quoted to Christou, the plaintiff did not endeavor to persuade the defendants to agree to a lower price, nor did he inform Christou that a lower price might be obtained. We think it could not be found that the former negotiations had not come *bona fide* to an end and were not, though only for a time, abandoned by the buyer and seller, nor that the negotiations were not resumed as the result of Seminara's intervention as broker. See *Delaney* v. *Doyle,* 267 Mass. 171, 177. *Glendon* v. *Pyne,* 275 Mass. 528, 530. The evidence would not warrant a finding that Christou was not found anew as a prospective customer, when he responded to the "blind" advertisement inserted in the newspaper by Seminara, compare *Whitcomb* v. *Bacon,* 170 Mass. 479, 482; *Winchester* v. *Erickson,* 281 Mass. 210, 213, or that the sale was not the result of a new force, namely, the efforts of Seminara.

The plaintiff has argued that because of the defendants' bad faith he is entitled to recover though the sale was finally made through Seminara. Apparently, the finding of bad faith was the basis of the judge's finding for the plaintiff. It is settled that a "liability to pay the broker's commission may . . . exist in consequence of unethical conduct of the employer which results in preventing full performance by the broker although the benefit which the employer sought from the broker's exertion is obtained by him. *Elliott* v. *Kazajian,* 255 Mass. 459, and cases there cited." *Glendon* v. *Pyne,* 275 Mass. 528, 529. Unethical

conduct or bad faith in a case such as the present one
"means a purpose on the part of the defendant[s] to obtain
without payment a profit from the plaintiff's exertions."
*Brooks* v. *Gregory*, 285 Mass. 197, 205. *Leonard* v. *Eldridge*,
184 Mass. 594, 595. *Cadigan* v. *Crabtree*, 186 Mass. 7, 13.
*Glassman* v. *Barron*, 277 Mass. 376, 381. Bad faith exists
where the employer revokes the broker's authority or makes
the sale through other means when the broker has per-
formed all he has undertaken, or is plainly or evidently
approaching success in his undertaking. *Brooks* v. *Gregory*,
285 Mass. 197, 205, and cases cited. The plaintiff's under-
taking was to produce a customer able, ready and willing
to purchase on the defendants' terms. We think the evi-
dence does not warrant a finding that he did produce such
a customer or that his negotiations were approaching suc-
cess, but rather compels a finding that he did not produce
such a customer and that his efforts to do so had ceased.
We are also of opinion that the evidence did not warrant a
finding of bad faith on the part of the defendants, and that
the defendants' requests that the evidence did not warrant
such a finding or a finding that the plaintiff was the efficient
cause of the sale should have been granted by the judge.
Accordingly, the order dismissing the report is reversed and
judgment is to be entered for the defendants.

*So ordered.*