JULIUS TOFIAS & COMPANY, INC. *vs.* JOHN B. STETSON
COMPANY.

Norfolk.    October 16, 1984. — February 22, 1985.

Present: GREANEY, C.J., DREBEN, & FINE, JJ.

*Broker,* Commission. *Contract,* With broker. *Practice, Civil,* Findings by
judge.

Under a contract between a real estate broker and the seller of a building
which granted the broker an exclusive listing for a fixed period of time,
subject to an extension clause entitling the broker to a commission on
any sale of the building within six months following termination of the
exclusive listing if the sale were made "on information or introduction"
the broker had furnished, the broker was not required to show that it
had been the efficient or predominating cause of the sale in order to
fulfil the condition of the extension clause. [395-397]

Where, at the jury-waived trial of a real estate broker's action to recover a
commission allegedly due it, the judge's finding of fact may have been
infected by his incorrect ruling of law concerning the extension clause
in the brokerage contract, this court remanded the case for further con-
sideration in light of its conclusion that the broker could satisfy the
conditions of the extension clause without having been the efficient or
predominating cause of the sale. [397-398]

CIVIL ACTION commenced in the Superior Court on February
28, 1977.

The case was heard by *John H. O'Neil,* J.

*William A. McCormack* for the plaintiff.

*Eric W. Wodlinger* for the defendant.

DREBEN, J. This is an appeal by the plaintiff broker, Julius
Tofias & Company, Inc., from a judgment holding that the
seller of a building in South Weymouth, John B. Stetson Com-
pany (Stetson), was not liable to the plaintiff for a broker's
commission. A written agency contract, dated July 22, 1976,
gave the plaintiff an exclusive listing for sixty days[1] and also

[1] The exclusive listing was expressed as follows: "In consideration of
your listing our Stetson Shoe Plant at South Weymouth, Massachusetts, and

contained the following extension provision: "If any sale takes place within six months after the termination of this agency *on information or introduction furnished by you* prior to such termination, your commission shall be deemed to have been earned" (emphasis supplied). The trial judge ruled, citing *Kacavas* v. *Diamond,* 303 Mass. 88, 91 (1939), that the broker had the burden of proving that it "was the real, predominating, and efficient cause of the sale," and found that "[t]he evidence does not go far enough to warrant finding the plaintiff to have been the efficient cause of the sale." We agree with the plaintiff that it need not have been the predominating cause of the sale in order to recover under the language of the extension clause and, accordingly, we reverse the judgment and remand for further findings.

We state the facts as found by the trial judge, including in our recitation some material contained in exhibits referred to by the judge and, also, some information which was stipulated. The sale for which the commission is sought took place at the end of October, 1976, within the six-month period of the extension agreement. The purchaser was the nominee of one Henry R. Hidell.

On two separate occasions prior to the execution of the brokerage agreement on July 22, 1976, Hidell had attempted to purchase the property, and had, through Hidell Associates, Inc., even entered into a purchase and sale agreement with Stetson in 1974. Hidell Associates, Inc., however, had been unable to obtain financing and, as a result, forfeited a $25,000 deposit to Stetson. Over a year later, in April and May, 1976, Hidell again sought to purchase the property but still was unable to arrange financing. Shortly after June 21, 1976, Hidell "ceased his efforts to purchase the building."

---

your promise to make reasonable efforts to sell same at $400,000, or at any other price to which we may consent, and of the sum of $1.00, the receipt of which is hereby acknowledged, we hereby appoint you our exclusive agent to sell said real estate through September 25, 1976, and agree to pay you a commission of 8% if you or anyone else sells same within this period." The contract also stated, "You agree to cooperate with other Realtors in your endeavor to sell this property."

On July 12, 1976,[2] a corporation of which Hidell was president was retained by Stetson as a consultant to assist Stetson with problems it had with the building inspector of Weymouth concerning the failure of the building to conform to the State Building Code.[3] Those problems had let Stetson's main tenant to stop paying rent because its subtenants could not obtain occupancy permits.

On July 22, 1976, the brokerage contract between the plaintiff and Stetson, described earlier in this opinion, was executed.[4] The next day, Stetson sent the plaintiff a list of prospective customers or brokers, writing, "I trust this list will be of help to you." Hidell did not appear on that list.

In late July, Stetson directed Donald Tofias (Tofias), then vice-president of Julius Tofias & Company, Inc., to confer with Hidell concerning the building and zoning problems of the building, and, as a result, Hidell and Tofias met on August 4, 1976. At the end of the meeting, Tofias asked Hidell whether he would be interested in purchasing the property. Hidell replied that he had no interest, having failed twice before and having lost $25,000. Tofias told Hidell that the terms of the sale had changed because Stetson was now eager for tax reasons to sell the property before October 31, 1976. He informed Hidell that the price had been reduced and that, for a buyer like Hidell, Stetson would take back a 100 percent purchase money mortgage. Prior to this meeting with Tofias, Hidell had not been aware of Stetson's desire to close before October 31, 1976, or of the possibility of Stetson's giving a 100 percent purchase money mortgage.

The plaintiff had no further contact with Hidell except a phone call in mid-August in which Hidell asked Tofias to keep away from the building inspector, as the latter objected to

---

[2] The judge's finding says June 12, but the exhibits to which he refers clearly indicate that the date was July 12.

[3] Hidell's letter confirming his employment as a consultant states that the inspector had ordered all occupancies to be terminated unless Stetson should begin "a viable program for bringing the existing structure up to code." Hidell's letter also recommended "that we contact all brokers in the area and tell them to get to work on developing . . . a sale."

[4] Stetson had tried in April to list the property with the plaintiff, but the latter refused to list it other than on an exclusive basis.

having to deal with more than one Stetson representative. To-fias, who had a practice of sending "contact slips" to Stetson after meeting potential purchasers, did not send a contact slip to Stetson concerning Hidell. The plaintiff did, however, in a letter dated October 1, 1976, include Hidell in a list of persons whom it claimed to "have shown or contacted."

During September, Stetson attempted to sell the property to another corporation which appeared on the plaintiff's October 1st list.[5] That sale fell through, and Guilden, the president of Stetson, came to Massachusetts on October 26, 1976. He per-suaded Hidell to purchase the building. On October 29, 1976, the property was sold to a nominee of Hidell on terms which gave the purchaser a 100 percent purchase money mortgage, relieved Hidell of any personal liability as Stetson took a note from a corporation which had no other assets, did not require payment for several years, and made funds available to Hidell for the building's operating expenses.

The judge, applying a standard of proof that the plaintiff had to show that it was "the real, predominating and efficient cause of the sale," found that the evidence did not warrant such a finding and also found: "Tofias' visit to Hidell had absolutely no effect upon Hidell in interesting him in the Build-ing, nor did Tofias alert Stetson to the fact that Hidell was an interested purchaser." Guilden's visit and negotiations, the judge found, "constituted an intervening and immediate cause which led Hidell to purchase the Building."

1.  The judge was correct in stating the normal rule governing brokers' commissions. Ordinarily, in the absence of express words or plain indication to the contrary, a broker is not entitled to a commission if his efforts are only a contributing cause to a sale. *John T. Burns & Sons* v. *Hands,* 283 Mass. 420, 422 (1933). He must be the "efficient" or "predominating" cause. *Kacavas* v. *Diamond,* 303 Mass. at 91. Parties, however, are free to make the broker's right to compensation depend upon other conditions. Thus, for example, *Smith* v. *Plant,* 216 Mass. 91, 98 (1913), held that a defendant who had broken off earlier

---

[5] Stetson did not notify the plaintiff of these negotiations.

negotiations with a customer for the sale of his business "in such a way that from a business point of view it was not possible for him to undertake to reopen them" could be found by a jury to have "employed the plaintiff to reopen them by bringing about meetings between him and the [customer], after which he [the defendant] was to carry on the negotiations and the plaintiff was to do nothing." In *Bloomberg* v. *Greylock Broadcasting Co.,* 342 Mass. 542, 547 (1961), the Supreme Judicial Court permitted a jury to find a similar limited contract of employment. See *Boyle* v. *Goldenberg,* 267 Mass. 24, 27 (1929); *Bonin* v. *Chestnut Hill Towers Realty Corp.,* 392 Mass. 58, 72 (1984) (Abrams, J., dissenting). See also Restatement (Second) of Agency § 448 comment b (1958), where a distinction is made "between the case where a person promises compensation to a broker if he produces a customer able, ready and willing to purchase property and the case where compensation is promised if the broker introduces a customer who subsequently purchases the property." In the former case the agreement is interpreted so as to make compensation due only if the broker is the effective cause of the sale, but this is not so in the latter case. In *Bloomberg* v. *Greylock Broadcasting Co.,* 342 Mass. at 550, the court held that the broker "need not have been the predominating cause of the sale in order to recover upon [his] limited contract of employment . . . ." See *Boyle* v. *Goldenberg,* 267 Mass. at 27.

We think the same principles are applicable here, where there is an exclusive brokerage contract for a fixed period of time and an extension clause. The latter provision is designed to afford the broker some measure of protection if the property is sold to a person with whom the broker, prior to the expiration of the term of the listing agreement, had some form of dealing described in the agreement.[6] The conditions to be met in similar

---

[6] It is often said that the purpose of such extension clauses is to protect the broker by preventing the owner from postponing acceptance until the listing agreement has expired and thereby circumventing the broker's right to compensation. *Mellos* v. *Silverman,* 367 So.2d 1369, 1371 (Ala. 1979). *Lloyd Hammerstad, Inc.* v. *Saunders,* 6 Wash. App. 633, 635-636 (1972). 7 Powell, Real Property § 938.16[2][c] (Rohan rev. ed. 1984).

extension clauses have usually been interpreted not to require that the broker be the predominating cause of the sale. See, for example, *Mellos* v. *Silverman,* 367 So.2d 1369, 1371 (Ala. 1979); *Galbraith* v. *Johnston,* 92 Ariz. 77, 80 (1962); *Moore* v. *Holman Real Estate Co.,* 129 Ark. 465, 469-470 (1917) ("sold . . . on information"); *Leonard* v. *Fallas,* 51 Cal.2d 649, 652 (1959); *Kaye* v. *Coughlin,* 443 S.W.2d 612, 614 (Tex. Civ. App. 1969). Contra *Shipman* v. *Wilkeson,* 112 N.Y.S. 895, 896-897 (1908) ("sold . . . on information"). See generally Annot., 51 A.L.R. 3d 1149 (1973).

2. This conclusion, however, does not mean, as the plaintiff urges, that it is entitled to a commission. The question still remains whether the sale of Stetson's property was made "on information or introduction furnished by" the plaintiff. While the clause requires substantially less than a showing that the broker was the effective cause of sale, the language, in conjunction with "the nature of the plaintiff's employment," implies that the plaintiff's right to compensation is dependent on its actions having at least some minimal causal connection with the sale or, in other words, being in the "chain of causation" leading to the sale. See *Bloomberg* v. *Greylock Broadcasting Co.,* 342 Mass. at 547, 550; *Smith* v. *Plant,* 216 Mass. at 98-99. Cf. *Tristram's Landing, Inc.* v. *Wait,* 367 Mass. 622, 628-629 (1975), where the Supreme Judicial Court, in adopting rules governing the payment of commissions, took note of the common understanding of what a seller expects when he hires a broker. See also the following cases which indicate that extension clauses with similar language often are construed as requiring the actions of the broker to have some causal relation to the sale. *Mellos* v. *Silverman,* 367 So.2d at 1373. *Korstad* v. *Hoffman,* 221 Cal. App. 2d Supp. 805, 808 (1963). *Harkey* v. *Gahagan,* 338 So.2d 133, 135 (La. Ct. App. 1976). *Lloyd Hammerstad, Inc.* v. *Saunders,* 6 Wash. App. 633, 636 (1972). Compare the language construed in cases where no causal relation was required, e.g., *Leonard* v. *Fallas,* 51 Cal. 2d at 651, 653; *E. A. Strout Co.* v. *Hubbard,* 104 Me. 366, 370-371 (1908); *Fischer* v. *Patterson,* 97 N.H. 318, 320 (1952); *Kaye* v. *Coughlin,* 443 S.W.2d at 613, 614. See generally Restatement (Second) of Agency §§ 448 & 449 comment b in each section.

Although, as we have already noted, the judge found that "Tofias' visit to Hidell had absolutely no effect upon Hidell in interesting him in the Building," this finding was made in the context of an incorrect ruling of law and may have been infected by that error.[7] We think fairness requires a remand to allow the parties and the judge to focus on the terms of the extension clause and whether the plaintiff satisfied its conditions in the light of our ruling that the broker need not have been the efficient or predominating cause of the sale.

Accordingly, we reverse the judgment and remand the matter to the trial judge. He may, in his discretion, hear additional evidence.

*So ordered.*

---

[7] In its brief, Stetson concedes that the plaintiff "had introduced sufficient evidence to support a finding for the broker if [the trial judge] had resolved credibility issues against Stetson."