Gants, J.
The defendant Dallamora Realty (“Dallamora”) has moved for summary judgment under Mass.R.Civ.R 56(c) on Count IV of the Complaint, the only count in the Complaint directed against Dallamora, alleging intentional interference with contract. For the reasons stated below, Dallamora’s motion for summary judgment is ALLOWED as to Count IV of the Complaint.
BACKGROUND
In evaluating a summary judgment claim, I am obliged to rely only on facts not in dispute and disputed facts viewed in the light most favorable to the party opposing summary judgment, which in this case is the plaintiff, Marilyn Brustin (“Brustin"). Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts recited below reflect the view of the case most favorable to Ms. Brustin, and should not be understood as findings of the Court.
In June 1992, Ms. Brustin was living in Watertown, Connecticut, managing her own wholesale jewelry business. Until 1984, before moving to Connecticut, she had been a successful real estate broker in Milford, Massachusetts, where she had worked for A.J. Lane Realtors and then opened her own real estate office — Brustin Realty. Before leaving for Connecticut, she sold the property on which her real estate office was located to Dallamora and worked for Dallamora as a real estate broker, on commission.
In July 1992, Andrew Lane, the principal of A.J. Lane Realtors and a real estate developer in the Milford area operating under the corporate name — Lodge Corporation, spoke with her and asked her to market the homes in a new subdivision he was developing in Milford. She agreed to come back to Massachusetts and broker these homes, but only as an independent broker under her old Brustin Realty name, receiving a five percent commission on each sale. She understood that she would bear her own costs in the marketing of these homes, but insisted that she did not want the overhead of operating her own office, so Lane agreed to give her an office and use of his telephone, fax machine, and copier. She also told Lane that she did not want to go into the Multiple Listing Service and pay $600 a year for that privilege. Lane responded that she did not need to because he was in Multiple Listing and she could use his access to it.
In August 1992, she travelled from Connecticut to visit the Milford subdivision. Lane introduced her to other Lodge Corporation employees as the broker who would be exclusively marketing the Milford subdivision. Brustin told Lane that, in considering whether to move from Connecticut, she was concerned about what would happen when the Milford subdivision was completed. Lane pulled out the plan of a new subdivision he was developing in Marlboro, and told her that she would be the exclusive broker on these homes as well. In reliance on these representations, Brustin sold her home in Connecticut, moved to Massachusetts, and began working as an independent broker selling the exclusive real estate listings in the Milford subdivision.
Lane was also seeking financing to develop a subdivision in Framingham. Lane told Brustin that he was considering Dallamora as realtors for this subdivision, but decided to give her the exclusive brokerage on it, since she was doing such a good job in Milford and Marlboro was not ready to start yet.
In July 1994, Lane asked her into his office and told her that he was giving all the Milford listings to Dallamora, and that the listings on the Marlboro and Framingham subdivisions were also going to Dallamora. She asked him why. He told her that Ed Davis of Dallamora had convinced him that Dallamora was bigger than Brustin Really and would do a better job. Lane also said that Davis had offered to charge only a 4.75 percent commission on sales. He said he needed the office he had lent her immediately, so that he could permit Dallamora to use it. The next day, Dallamora diverted her business telephone calls to its own telephone, put its name in place of hers on the listings and the advertising, and essentially took over as the real estate broker for these listings.
There is no dispute that the terms of Brustin’s agreement with Lodge Corporation and Lane were never memorialized in writing; nor were, any of the listings she was given by him reduced to writing. It is also undisputed that no fixed duration was given for the period in which Brustin would continue to have these real estate listings. In her deposition, she stated that “it was assumed” that her term as the broker was indeterminate or indefinite, but she did not testify that Lane ever told her so. Brustin admitted that she *284 “probably” had to do a good job to continue as the broker, but insists that she did do a good job.
DISCUSSION
To prevail on summary judgment, Dallamora must establish that there is no genuine issue of material fact on an essential element of Brustin’s claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Where, as here, the party opposing summary judgment has the burden of proof at trial, the moving party is entitled to summary judgment if it “demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). ‘To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
To prevail on her claim that Dallamora intentionally interfered with her contractual relationship with Lodge Corporation, Brustin must prove four elements by a preponderance of the evidence:
(1) she had a contract with Lodge Corporation;
(2) Dallamora knowingly induced Lodge Corporation to break that contract;
(3) Dallamora’s interference, in addition to being intentional, was improper in motive or means; and
(4) Brustin was harmed by Dallamora’s actions.
G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). Dallamora contends that Brustin cannot sustain her burden of showing either that she had a contract with Lodge Corporation or, if she had a contract, that Dallmora knowingly induced Lodge Corporation to break that contract. I will address each argument in turn.
I. Did Brustin Have a Contract with Lodge Corporation?
The Massachusetts caselaw surrounding real estate brokerage agreements is hardly a model of clarity; both parties are able to point to Massachusetts appellate decisions, most of them more than thirty years old, that support their position. Compare, e.g., Bartlett v. Keith, 325 Mass. 265 (1950) (writing giving broker exclusive right to sell property for fixed period of time is unilateral offer, not enforceable contract), with Coan v. Holbrook, 327 Mass. 221 (1951) (writing giving broker exclusive right to sell property for fixed period of time is bilateral, enforceable contract).
However, a careful review of that caselaw reveals certain principles and pragmatic judicial policy choices that have shaped the common law. Generally, the law provides that a real estate broker does not earn her commission unless she has been the “efficient” or “predominating" cause of a sale of property, not merely a “contributing” cause. Julius Tofias & Co. v. John B. Stetson Co., 19 Mass.App. 392, 395 (1985). Moreover, a sale has not occurred that triggers payment of the commission until three conditions are met:
(1) the broker produces a buyer ready, willing, and able to buy on the terms set by or agreed to by the seller;
(2) the seller enters into a binding contract to sell;
(3) the sale is consummated, unless the consummation is wrongfully thwarted by the seller.
Currier v. Kosinski, 24 Mass.App. 106, 107 (1987). The crux of these requirements is that the property owner must pay a brokerage commission only when the sale closes, so that the commission can come from the proceeds of the sale, and then only to the broker who was instrumental in making the sale. These requirements are not invariable; they can be altered by the parties. However, to protect the inexperienced homeowner from being required to pay a commission when the sale was never executed, or from being obliged to pay a commission to a broker who was not the efficient or predominating cause of the sale, the law requires that any such deviations from the norm be expressly stated with specificity. See Julias Tofias & Co. v. John B. Stetson Co., 19 Mass.App. at 395; Currier v. Kosinski, 24 Mass.App. at 107. An agreement between a seller and a realtor, for instance, may provide that a realtor has an exclusive right of sale for a period of time, such that only the realtor can sell the property during this time period and that she receives a commission on any such sale regardless of its “efficient” cause, but the agreement must clearly and specifically declare this intent. See Julias Tofias & Co. v. John B. Stetson Co., 19 Mass.App. at 395-97.
Moreover, since an independent broker generally is paid only by commission upon the sale of the properly, the law does not require the seller to pay the broker the fair value of her services on a contract claim even when the seller has breached an agreement to grant the broker an exclusive listing for a period of time and the broker has devoted time, effort, and money to the sale of the property in reliance on having an exclusive listing. See John T. Burns & Sons, Inc. v. Brasco, 327 Mass. 261, 263 (finding the seller not liable for the fair value of the broker’s services). In short, “(e)ither the [seller] was liable for a commission or he was not liable at all.” Id. at 263.
In fitting these principles and policy judgments into the language of contract law, Massachusetts courts have found that a seller’s granting of a real estate listing, even an exclusive listing for a period of time, is not a binding contract with consideration, but a unilateral offer that becomes a binding contract only upon performance of the crucial condition — the execution of *285 the sale of the property to a buyer procured through the efforts of the broker. See, e.g., Des Rivieres v. Sullivan, 247 Mass. 443 (1924); Bartlett v. Keith, 325 Mass. at 267. The virtue of this construct is that, under elementary contract law, it produces the desired result — the seller has no obligation to pay any commission to the realtor unless and until she is instrumental in closing the real estate transaction.
The problem with this construct is that it ignores the significance of an exclusive listing, where the seller expressly declares that he will not use another realtor for a period of time precisely to induce the broker to invest more time and effort in selling his property than she would invest if other brokers shared the listing. Consequently, the Supreme Judicial Court years ago found that brokerage agreements are binding, bilateral contracts if the realtor provides the consideration of promising, explicitly or implicitly, that she will use all reasonable efforts to sell the property during the period of the exclusive agency. See Coan v. Holbrooke, 327 Mass. at 223 and 223 n. 1; John T. Burns & Sons, Inc. v. Brasco, 327 Mass. at 263.
It is not surprising, however, that the Supreme Judicial Court has abandoned this formulation in more recent years, because the relief granted to a broker against a seller who breached an exclusive brokerage arrangement by giving the listing to another broker or selling the property himself was to require the seller to pay the aggrieved broker a commission on the subsequent sale of the property. See Coan v. Holbrooke, 327 Mass. at 223 and 223 n.1; John T. Burns & Sons, Inc. v. Brasco, 327 Mass. at 263. The granting of this remedy to protect the promise of exclusivity was contrary to the fundamental principle that a broker does not earn her commission unless she is the efficient cause of the sale. Consequently, the law concerning exclusive brokerage agreements has evolved away from abstract legal constructs and towards two guiding principles of contract.
First, generally, a seller may without liability to the broker revoke an exclusive agency and is obliged to pay that broker a commission only if the realtor was the “efficient cause of the sale.” Pasquale v. Shore, 343 Mass. 239, 246 (1961). In short, the exclusivity of a brokerage agency, even for a stated period of time, is not enforceable in contract by the aggrieved broker. The broker has a remedy in contract only if, during the agency, she procured the eventual buyer of the property and was the efficient cause of the subsequent sale.
Second, courts will order the seller to pay a commission to a broker who was not the efficient cause of the sale only when (1) the seller has agreed to list the property exclusively with a broker for a fixed period of time; (2) the agreement gives the broker the “exclusive right of sale” rather than simply an “exclusive listing or agency,” that is, it obligates the seller to pay the broker a commission if the property is sold within the fixed period regardless of whether the broker played any role in its sale; and (3) these terms are made expressly, unambiguously, and specifically. See Bump v. Robbins, 24 Mass.App. 296, 303-05 and 304 n.6 (1987); Samuel Nichols, Inc. v. Molway, 25 Mass.App. 913 (1987); Julias Tofias & Co. v. John B. Stetson Co., 19 Mass.App. at 395.
Applying these principles to the case at bar, it is clear that, even viewing the evidence in the light most favorable to the plaintiff Brustin, the oral agreement between her and Lodge Corporation is not an enforceable brokerage contract. Even if, as she claims, Mr. Lane agreed to give her the exclusive listings for all the homes in the three Lodge Corporation subdivisions until they were sold, she can point to no writing nor any oral statement that expressly, unambiguously, and specifically declared that she had the exclusive right of sale of these homes, so that she would receive a commission upon their sale regardless of her role in the sale. Indeed, she does not even allege that the agreement provided for an exclusive right of sale. Consequently, Brustin has no enforceable right to preserve the exclusivity of her listings. She is entitled to her commission for the sale of those listed properties in which she was the efficient cause, but has no enforceable agreement with Lodge Corporation or Lane that would entitle her to commissions upon the sale of any listed property for which she was not the efficient cause. Since Brustin has no enforceable right to the continued exclusivity of her listings, she cannot sustain an allegation that Dallamora interfered with a contract giving her these exclusive listings.
II. If Brustin had an Enforceable Contract with Lodge Corporation, Did Dallamora Knowingly Induce Lodge Corporation to Breach that Contract?
Even if Brustin had an enforceable contract with Lodge Corporation in the continued exclusivity of listings for the homes in the Milford, Marlboro, and Framingham subdivisions, she has no reasonable expectation of proving at trial that Dallamora induced Lodge Corporation to breach that contract.
The gist of the evidence proffered by Brustin in support of her claim of inducement is that:
Dallamora knew of her exclusive agreement with Lodge Corporation;
Ed Davis of Dallamora coveted her listings with Lodge Corporation. When she had the exclusive on those listings, he asked her to come to work with Dallamora because he wanted Dallamora’s name on the Marlboro subdivision in order to increase its market share against its primary competitors; and
Lane told her when he terminated her that Ed Davis had convinced him that Dallamora was bigger than Brustin Really, would do a better job, and would charge a lower commission on sales.
Brustin has presented sufficient evidence to support an inference that Dallamora knew of her exclusive *286 arrangement with Lodge Corporation and wanted these listings. Yet, these inferences are inadequate by themselves to permit a jury to find inducement; there must be additional evidence that Dallamora knowingly did some act to induce Lodge Corporation to abandon Brustin in favor of Dallamora. There is inadequate evidence of any such act to raise a material issue of fact on this essential element.
Brustin has no personal knowledge of any such act of inducement. All that she knows is what she contends Lane told her when he fired her, but Lane’s alleged explanation to her is plainly inadmissible hearsay as to Dallamora, since Brustin seeks to admit these statements for the truth of the matter asserted.
Lane denies any such inducement. He testified at his deposition that he made the decision to fire her by himself based solely on her poor performance, and that no one influenced him in making this decision. He also testified that he did not think that Ed Davis told him that Dallamora could do a better job than Brustin; he said he assumed it could, which is why he hired Dallamora to replace her. Nor does his deposition state with any clarity that any Dallamora employee told him that Dallamora could do a better job than Brustin. Moreover, Lane testified that he paid Dallamora the same five percent commission he had paid Brustin; he denied that Davis offered to take less.
Nor has the plaintiff presented any evidence that Davis admitted to any act which could fairly permit an inference of inducement.
Brustin also alleges that, the day after she was fired, Dallamora put the listings from the Framingham subdivision into the Multiple Listing Service in Dallamora’s name, took down the Brustin Realty sign at the subdivision and replaced it with a Dallamora sign, call forwarded the calls from her telephone at the Lodge Corporation office to Dallamora’s telephone, and changed advertising copy she prepared by replacing her name with that of Dallamora. Since all of these events took place after Lane had terminated her, the most they can show is that Lodge Corporation knew when it fired Brustin as the exclusive broker that it would replace her with Dallamora, and that Dallamora moved in quickly when it obtained this coveted agency. These inferences, added to all the other reasonable inferences viewed in the light most favorable to the plaintiff, fall short of sustaining her burden of establishing a material issue of fact concerning inducement.
ORDER
For the reasons stated above, it is hereby ORDERED that summary judgment is granted on behalf of the defendant Dallamora as to Count Four of the Complaint. Since this is the only count alleged against Dallamora and Dallamora has brought no counterclaim, a separate final judgment under Mass.R.Civ.R 54(b) shall enter in this case on behalf of Dallamora, with costs, there being no just reason for delay.