Kane, Robert J., J.
The plaintiff initiated the underlying action against the defendant for breach of *570 contract and breach of the covenant of good faith and fair dealing, claiming that the defendant failed to pay a commission owed under an exclusive brokerage agreement. The parties have filed cross motions for summary judgment. For the following reasons, both the plaintiffs Motion for Summary Judgment and the defendant’s Motion for Summary Judgment are DENIED.
BACKGROUND
The defendant, Landvest, Inc. (“Landvest”), is a real estate brokerage firm that primarily represents buyers and sellers of high-end waterfront properties located in the northeastern United States. On May 16, 2005, the defendant, Morris Lippincott (“Lippincott”), signed an Exclusive Right to Sell Agreement (“the Agreement”), giving Landvest the authority to list for sale his property at Lot 6, Battlefield Road, Chatam, MA (“the Property”). The Agreement stated that Landvest would be the exclusive broker of the property for six months and would be entitled to a 6% commission “ [i] f the Owner(s) enter into a contract to sell the Property and such contract goes to settlement.” Before Lippincott signed the Agreement, he had expressed concern to Stewart Young (“Young”), employee of Landvest, regarding his plans to offer the property to his neighbor, Jamie McClennen (“McClennen”). Lippincott explained that McClennen had supported attempts to conserve the land in its natural state, and, given his status as a neighbor and a friend, Lippincott wanted to offer the Property directly to McClennen. Lippincott indicated that he wished to exempt the sale of the Property to McClennen from the Agreement. Young rejected this idea, but eventually agreed that Landvest would be willing to reduce the commission to 3.5% in the event that McClennen purchased the property or an offer was accepted by him by June 16, 2005. Young added a handwritten amendment to the Agreement reflecting this reduction and both he and Lippincott initialed this change.
In addition to the commission due to Landvest if the property sold within the six months that Landvest was the exclusive broker, the Agreement also contained a provision providing for commission if “the Owner shall sell, or contract to sell, the Property or any portion thereof (1) to any buyer with whom negotiations were pending at the time of such expiration or termination [of the Agreement], or (2) within six months of such expiration or termination, to any Buyer to whom the Property was submitted by Landvest, Inc.” Landvest’s obligations to Lippincott in return for the exclusive listing and the various commissions were stated in the Agreement as follows:
Landvest, Inc. may market the property directly and through such licensed real estate brokers as it deems advisable, (b) Landvest, Inc. may market and advertise the Property through the use of such promotional materials and advertisements (which shall include the placing of “for sale” signs in the Property, and inclusion of the Property on LandVest’s Internet site as it deems advisable), (c) LandVest, Inc., may distribute such promotional materials, advertisements, and/or listings to such other licensed real estate brokers as it deems advisable and (d) LandVest, Inc., agrees that it will indemnify and hold the Owner(s) harmless from and against any claims or demands for commissions or other fees in the nature of commissions made by such other licensed real estate brokers through whom LandVest, Inc. has marketed, listed, or otherwise promoted the Property . . .
In the following months, Landvest marketed the property by creating promotional material, placing advertisements, and showing the Property to prospective buyers. On August 1, 2005, McClennen called Lippincott and discussed the possibility of purchasing the Properly. On August 10, after Lippincott and McClennen met and walked the Property, McClennen offered to buy the Properly for $2 million. Lippincott immediately accepted the offer. That same day, Lippincott’s attorney called Young to inform him of the accepted offer and to instruct him not to market the Property further. Lippincott and Young continued to communicate about the Property in September, and discussed alternatives if the deal with McClennen fell through. They agreed that Landvest would show the Property and begin preliminary discussions with another prospective buyer, Richard Murphy.
The Agreement expired on January 1, 2006. Lippincott conveyed the Property to McClennen for $2 million on February 17, 2006. In mid-March, Young saw in a local newspaper that the Property had been sold. Young then sent Lippincott a letter and invoice for $120,000 commission on the property. Lippincott refused to pay a six percent commission to Landvest. On May 19, 2006, Landvest initiated the current action for breach of contract and breach of the covenant of good faith and fair dealing, claiming that it was entitled to a commission under the Agreement’s extension clause. Landvest then moved for summary judgment on both of its claims, seeking a six percent commission under the Agreement, and arguing that Lippincott’s failure to pay was rooted in bad faith. In response, Lippincott moved for summary judgment on both of Landvest’s claims, arguing that the Agreement was void for lack of consideration.
DISCUSSION
Traditionally, a real estate broker is entitled to a commission only if he is the “efficient” or “predominating” cause of a sale of property, not merely a “contributing” cause. Julius Tofias & Co. v. John B. Stetson Co., 19 Mass.App.Ct. 392, 395 (1985); see Kacavas v. Diamond, 303 Mass. 88, 91 (1939). Parties may decide, however, to enter into an exclusive brokerage agreement, whereby the broker is the exclusive agent of the property and is entitled to commission even if the seller locates a buyer himself. Id. Where an exclusive bro *571 kerage agreement is supported by consideration, it is bilateral and irrevocable during its stated term. Bump, v. Robbins, 24 Mass.App.Ct. 296, 305 (1987). However, if the agreement lacks consideration, it is merely a unilateral promise to pay a commission if the property is sold during the stated term. Id. Moreover, such a promise may be revoked prior to a sale, and a sale by the owner would constitute revocation. Id.
In determining whether an exclusive brokerage agreement is supported by adequate consideration, the court must examine the legal obligations assumed by the parties in the agreement. See Julius Tofias & Co., 19 Mass.App. at 395 (1985). Sufficient consideration requires, at minimum, a mutual exchange of promises. See Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 763 (1978). Indeed, in avalid exclusive brokerage agreement, the broker “must be more than a passive recipient of the grant of exclusive agency; the broker must agree to do something, such as advertising the property and making diligent effort to find a buyer on the seller’s terms.”[1] Samuel Nichols, Inc. v. Molway, 25 Mass.App.Ct. 913, 913 (finding a valid exclusive brokerage agreement where the broker made an “enforceable promise which bound it to expend efforts on the property owner’s behalf’). Although a promise to perform constitutes valid consideration, “(w]ords of promise do not constitute a promise if they make performance entirely optional with the purported promisor.” Restatement (Second) of Contracts §76 cmt. d. An illusoiy promise, therefore, is not sufficient consideration to support an exclusive brokerage agreement. See Upper Cape Realty Corp. v. Morris, 53 Mass.App.Ct. 53, 58 (2001).
Contract interpretation is “largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties’ intention.” Shea v. Bay State Gas Co., 383 Mass 218, 222-23 (1981). If a contract is clear, the words must be construed in their usual and ordinary sense, and the Court will not “admit parol evidence to create an ambiguity when the plain language is unambiguous.” Gen’l Convention of New Jerusalem in the U.S., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007). However, while an initial determination of the existence of a contract ambiguity presents a question of law for the Court, Bank v. Thermo Elemental, Inc., 451 Mass. 638, 648 (2008), where a contract is found to be ambiguous, it is error for a trial judge to rule as a matter of law as to the meaning of the agreement which is a question of fact for a jury. Id. at 651.
“Contract language is ambiguous ‘where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.’ ” President & Fellows of Harvard Coll. v. PECO Energy Co., 57 Mass.App.Ct. 888, 896 (2003), quoting Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass.App.Ct. 726, 729 (1999); Jefferson Ins. Co. v. Holyoke, 23 Mass.App.Ct. 472, 474-75 (1987) (an instrument is ambiguous when its language is reasonably susceptible of more than one meaning). “To answer the ambiguity question the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties.” Bank, supra at 648, citing MacKenzie, 449 Mass. at 835-36, 838. The meaning of a term used in a contract is usually determined by reference to its common meaning, as reflected in dictionary definitions, unless the parties have expressed an intent that a different point of reference should be used. Town of Boylston v. Comm’r of Revenue, 434 Mass. 398, 405 (2001).
Here, there exists a genuine issue of material fact as to whether the Agreement between Landvest and Lippincott contained the requisite consideration to form an exclusive brokerage arrangement. In the Agreement, Lippincott unequivocally grants Landvest the authority to market the Property and grants a legally enforceable right, a commission, to Landvest. The Agreement, however, contains no language that specifically requires Landvest to honor its return promise to market the Property for Lippincott. The Agreement repeatedly states that Landvest “may” undertake certain marketing activities in connection with the Property that it “deems necessary.” These terms are conditional and do not indicate that Landvest is obligated to take any action whatsoever. Moreover, although Landvest expressly agrees to indemnify Lippincott and report all offers directly to him, these promises fail to provide the requisite consideration as they are entirely predicated on the aforementioned illusory promises. See Restatement (Second) of Contracts §76 cmt. d (a promise conditional on an event within the control of the promisor is valid consideration only where the promisor has also promised that the condition will occur).
Notwithstanding the fact that the majority of the language in the contract fails to bind Landvest, there is a phase within the description of Landvest’s optional duties that may require Landvest to perform. The Agreement indicates that Landvest “may market and advertise the Property through the use of such promotional materials and advertisements (which shall include the placing of‘for sale’ signs in the Property, and inclusion of the Property on LandVest’s Internet site as it deems advisable).” The phrase “which shall include the placing of for sale signs” renders that segment of the contract ambiguous. Reasonable people could disagree as to whether the phrase requires Landvest to place the signs on the Property, or whether the phrase is simply modifying an illusory obligation and is therefore also within Landvest’s discretion. In light of this specific ambiguity, it would constitute error for this Court to determine the meaning of the unclear language of the Agreement between the parties. Rather, where as here such an ambiguity exists, *572 the meaning of the contract presents a question of fact for the jury. See Bank, supra at 648-51.
If, at trial, the jury finds that no valid contract governed the parties, Landvest may attempt to recover in quantum meruit.[2] While the summary judgment record indicates that Landvest provided services of value to Lippincott under circumstances which Lippincott would reasonably expect to pay for the benefit received, there would exist a genuine issue of material fact as to the value of the services rendered.
ORDER
For all of the foregoing reasons, both Landvest’s and Lippincott’s Motion for Summary Judgment are DENIED.

The defendants incorrectly claim that Nichols imposes a heightened consideration requirement in an exclusive brokerage agreement. Indeed, an exclusive brokerage need only be supported by some consideration. See Nichols, 25 Mass.App.Ct. at 915.

John T. Burns & Sons, Inc. v. Brasco, 327 Mass. 261 (1951), relied upon by the defendant, is completely inapplicable here. In that case, a broker who was party to a valid brokerage agreement attempted to recover for the value of his services after he failed to sell the property during the contract term. Here, as discussed above, there was no valid contract between the parties and Landvest may attempt to recover for any unjust enrichment by Lippincott.