PRESIDENT AND FELLOWS OF HARVARD COLLEGE & others[1] *vs.*
PECO ENERGY COMPANY & others.[2]

No. 01-P-786.

Suffolk. November 22, 2002. - April 30, 2003.

Present: GELINAS, COWIN, & KAFKER, JJ.

*Contract,* Construction of contract. *Evidence,* Extrinsic affecting writing.
*Electricity.*

This court vacated a judgment entered by a Superior Court judge in a declara-
tory judgment action in favor of companies that provided electricity to
certain purchasers on the basis that the purchasers were entitled under the
parties' agreements to select either a five-year contractual term or a two-
year contractual term, but not both, which the purchasers disputed; where
the contracts in question were ambiguous in that they omitted an essential
term, specifically, a provision that resolved the parties' dispute, and where
the question could not be answered by resort to other provisions of the
contracts, the court remanded the case to the trial court to consider extrinsic
evidence and, on the basis of such evidence, to supply the missing es-
sential term. [891-896]

CIVIL ACTION commenced in the Superior Court Department on
December 22, 2000.

The case was heard by *Allan van Gestel,* J., on motions for
partial summary judgment and judgment on the pleadings.

*Kenneth W. Salinger* for the plaintiffs.

*Kenneth L. Kimmell* for the interveners.

*Marilyn D. Stempler (Gregory T. Arnold* with her) for the
defendants.

[1]Northeastern University, Beverly School for the Deaf, Massachusetts Eye
& Ear Infirmary, Carney Hospital, Assumption College, The Center for Blood
Research, The Marine Biological Laboratory, and Smith College as plaintiffs-
appellants. The towns of Barnstable, Brewster, Chatham, Dennis, Edgartown,
Falmouth, Harwich, Oak Bluffs, Provincetown, Sandwich, Truro, West Tis-
bury, and Yarmouth, and Barnstable County, Dukes County, and the Hyannis
Fire District have been permitted to intervene as appellants.

[2]Horizon Energy Company, doing business as Exelon Energy, and Exelon
Enterprises Company, LLC.

COWIN, J. The plaintiffs, parties to contracts with the defendants (collectively, PECO) that obligated the plaintiffs to purchase, and PECO to sell, electricity, sought declaratory relief in the Superior Court. The dispute arose out of PECO's insistence that the plaintiffs were entitled under the agreement to select either a five-year contractual term or a two-year contractual term, but not both. The plaintiffs assert the opposite, specifically, that they are authorized to select a two-year agreement and, at its expiration, contract for the remainder of the five-year term.[3] Certain other parties were allowed to intervene as parties plaintiff. The interveners assert that the contracts in question are ambiguous in that they omit an essential term, specifically, a provision that resolves the above dispute, and that the question cannot be answered by resort to other provisions of the contracts. Accordingly, they ask that the case be remanded to the trial court to consider extrinsic evidence and, on the basis of such evidence, to supply the missing essential term. The judge allowed PECO's motion for judgment on the pleadings, see Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974), ruling that the contracts unambiguously limited the plaintiffs to an election between the two agreements. The plaintiffs and interveners appealed. We agree with the interveners that the contracts are ambiguous with respect to the issue that divides the parties, and that it was error to attempt to decide the matter on the terms of the contracts alone. Therefore, we vacate the judgment and remand for further proceedings in the trial court.

1. *Material facts.* MHI, Inc. (MHI), is a wholly owned subsidiary of the Massachusetts Health and Educational Facilities Authority. MHI organized the "PowerOptions" program in order to enable municipalities, educational institutions, and other nonprofit organizations to purchase electricity on advantageous terms. In this regard, MHI negotiated on behalf of its members, including the plaintiffs and interveners, a series of contracts with the defendants. Under the PowerOptions Electric Program Agreement (master agreement), the defendants

---

[3]The plaintiffs also sought damages for breach of contract and for violation of G. L. c. 93A.

obligated themselves to sell electricity to eligible members[4] at predetermined prices for certain periods.[5] Paragraph 1(a)(i) of the master agreement provides in relevant part: "[PECO] shall sell electricity to all Eligible Members[6] who agree, prior to the date six (6) months before such agreement would by its terms expire, to enter into a bilateral agreement (each a 'Participant Agreement') with [PECO] on the terms and conditions set forth in the form of Participant Agreement for the Sale and Purchase of Electricity attached hereto as Exhibits A and A-1."[7] Exhibit A consisted of a form five-year agreement, while exhibit A-1 consisted of a form two-year agreement.

The termination date for the two-year agreement was March 1, 2000, with a one-year extension at the option of the participant. The participant was entitled to enter into the agreement at any time prior to six months before the March 1, 2000, termination date, thereby generating a contract with a term of as little as six months. Similarly, the termination date for the five-year agreement was March 1, 2003,[8] with the participant likewise entitled to enter into this contract at any time prior to six months before the March 1, 2003, termination date. Pricing terms were more favorable to participants under the five-year agreement than under the two-year agreement.

Each of the plaintiffs and interveners entered into a two-year agreement with PECO and exercised the option to extend the agreement for an additional year. Upon completion of the option year, each sought to enter into the remainder of the term of the five-year agreement. PECO refused, asserting that paragraph 1(a)(i) of the master agreement limited eligible members to a single choice between the five-year agreement and the two-year agreement. The judge agreed, concluding that the phrase "a

---

[4]It is not disputed that the plaintiffs and all interveners are eligible members.

[5]In the alternative, PECO, instead of supplying electricity at the contract rate, could, at its option, elect to have the customer acquire electricity from another supplier, PECO paying the difference between the contract rate and the rate charged by the other power source.

[6]"Eligible members" are the various municipal, educational, and other nonprofit organizations permitted to participate in the PowerOptions program.

[7]The agreements attached as exhibits A and A-1 were to be entered into by the eligible member and PECO without further negotiation.

[8]In the case of the five-year agreement, the participant was not given a one-year extension option.

bilateral agreement" appearing in paragraph 1(a)(i) was intended to limit eligible members to a single participant agreement each.

2. *Discussion.* The interpretation of an unambiguous written contract constitutes a ruling of law that is subject to plenary review on appeal. *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.,* 47 Mass. App. Ct. 726, 729 (1999). Here, the judge properly attempted to determine whether the plain language of the master agreement adequately evidenced the intention of the parties regarding the question whether an eligible member was restricted to either the two-year arrangement or the five-year arrangement. Concluding that the contract was unambiguous on the subject, the judge interpreted the clause of paragraph 1(a)(i) of the master agreement that an eligible member could "enter into a bilateral agreement (each a 'Participant Agreement') with [PECO] on the terms and conditions set forth in the form of Participant Agreement for the Sale and Purchase of Electricity attached hereto as Exhibits A and A-1" to mean that such eligible member could elect one of the alternative arrangements, but not both. Looking to the "usual and ordinary sense" of the words employed, see *116 Commonwealth Condominium Trust* v. *Aetna Cas. & Sur. Co.,* 433 Mass. 373, 376 (2001), the judge decided that the parties' use of the word "a" before the words "bilateral agreement" meant that they intended only one agreement per eligible member because use of the word "a" in this context denoted "one" or "single" rather than "several" or "many." The judge buttressed this conclusion by stating that "[t]o hold otherwise would be to ignore much of the other contractual language and add new provisions not included by the contracting parties." The judge did not specify what other contractual provisions would be ignored or what new provisions not contemplated by the parties would be added.

The plaintiffs rely on paragraph 1(a)(i) of the master agreement, arguing that the language commits PECO to whatever agreement or agreements an eligible member may choose, as long as that member enters into the agreement not later than six months prior to its expiration date. This would then enable an eligible member to enter into the two-year agreement and the remaining term of the five-year agreement sequentially, provided that the member agreed to the five-year contract at least six

months before its termination. PECO obviously agrees with the interpretation of the judge. As indicated, the interveners contend that the contract cannot be construed with respect to the issue without the taking of evidence.

While the judge's construction of paragraph 1(a)(i) of the master agreement is plausible, we are not convinced that it is the only, or even the most persuasive, view of the language. "[T]he particle 'a' is not necessarily a singular term; it is often used in the sense of 'any,' and is then applied to more than one individual object." *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham*, 404 Mass. 365, 368 (1989), quoting from *National Union Bank* v. *Copeland*, 141 Mass. 257, 266 (1886). We consider it unlikely that, had the parties intended to resolve the question whether an eligible member could enter into only one or both agreements, they would have done so by reliance on the article "a" as a modifier of "bilateral agreement." More precise language was available. The word "a" strikes us as too skimpy a foundation on which to place such weight.

Although the judge did not specify the other portions of the contracts that he found persuasive on the subject, PECO relies on three such sections as support for its position that an eligible member may elect one, but only one, agreement. In this regard, PECO points to paragraph 3 of the two-year agreement (exhibit A-1 to the master agreement), paragraph 5 of the master agreement, and paragraph 7.2 of the five-year agreement (exhibit A to the master agreement). PECO relies as well on the pricing structures of the respective arrangements.

In brief, PECO refers first to paragraph 3 of the two-year participant agreement[9] that provides for a one-year extension at the option of the participant, arguing that the grant of that option by implication excludes all other extensions, including

---

[9]Paragraph 3 provides in relevant part:

"This Agreement shall commence upon the date first stated above, and . . . this Agreement shall remain in ⁻ᶠᶠect until the second anniversary of the first day of Retail Access in ʹːe service territory of any LDC . . . at which time it shall terminateʹ· ₒ . By providing Exelon Energy written notice at least thirty (30) də ırior to expiration of the Initial Term, Participant, at its option, maː ːtend the Agreement for an additional year at the price described iɾ ɛction 7.2 below."

57 Mass. App. Ct. 888 (2003)         893

President and Fellows of Harvard College *v.* PECO Energy Company.

entry into the remainder of the five-year arrangement. Next, PECO turns to paragraphs 5(a) and 5(b) of the master agreement.[10],[11] Paragraph 5(b) provides for the expiration of the master agreement upon the termination of all participant agreements; however, notwithstanding that provision, the master agreement shall remain in effect with respect to any participant to which PECO chooses to continue to supply energy or services. See note 10, *supra.* Paragraph 5(b) states in essence that PECO has the right to make an offer to supply electricity to members after March 1, 2000, the end of the term of the two-year agreement, which offer MHI shall accept or reject before seeking proposals from other competing suppliers. From this, PECO concludes that this is the only manner in which a two-year participant can continue to be serviced under the master agreement (apart from the one-year extension to which such participant is otherwise entitled), and, should such participant be able to elect the remainder of the five-year term, paragraphs 5(a) and 5(b) would become superfluous.

PECO then points to paragraph 7.2 of the five-year participant agreement.[12] That paragraph sets forth the two pricing choices available to a five-year participant with respect to agreement years three through five, with the participant's election between the choices required not later than thirty days prior to the end of agreement year two (February 28, 2000). Thus, PECO argues,

[10]Paragraph 5(a) provides:

"The term of this Agreement shall end upon the termination of all Participant Agreements and agreements with Adjunct Members; provided, that to the extent PECO Energy extends any Participant Agreement or otherwise continues to supply energy or services to any present or former Participant, this Agreement shall continue in effect with respect to such present or former Participants . . . ."

[11]Paragraph 5(b) states:

"Provided that on or before October 1, 1999, PECO Energy submits an offer to supply Electricity to Members for a term(s) commencing March 1, 2000, MHI will review and accept or reject PECO Energy's proposal in MHI's sole discretion prior to issuing any request for proposals to other competitive suppliers."

[12]Paragraph 7.2 provides in relevant part:

"*Agreement Years 3 through 5*: At least thirty (30) days prior to the end

this is further proof that the remainder of the five-year agreement is not available to the two-year participant because the two-year agreement would not have terminated by February 28, 2000, and therefore the participant would have missed the date by which a pricing election for years three through five of the five-year agreement was required to have been made. Finally, PECO emphasizes the price benefit available to an eligible member who elects the five-year contract, arguing that it makes no business sense to assume that an eligible member could protect itself by electing the shorter contract term, investigate alternative powers of supply, and then, if it desired, obtain the lower prices of the remainder of the five-year term despite not having chosen that arrangement at the outset.[13]

While PECO's arguments may have merit, they are matched in persuasiveness by off-setting arguments of the plaintiffs. Thus, the plaintiffs point out that paragraph 3 of the two-year agreement does not address the question whether the remainder of a five-year term is available to an eligible member that has selected the two-year term. Rather, it deals only with extensions of the two-year term by an additional year at the option of the participant, and has no bearing on any right that participant may otherwise have to enter into the remainder of the five-year arrangement after the two-year term (extended or not) expires.

With respect to paragraph 5(a) of the master agreement, the plaintiffs observe that the provision governing expiration of that agreement refers to the expiration of all participant agreements, including five-year agreements. Thus, no inference can be drawn

---

of Agreement Year 2, Participant shall notify [PECO] in writing of its selection of one of the following pricing options, either Option 'A' or Option 'B,' to apply from the beginning of the Agreement Year 3 to the expiration of the Initial Term."

[13]PECO also takes note of the different uses of the terms "eligible member" and "participant." An "eligible member" is an entity that may enter a participant agreement. A "participant" is an eligible member who has in fact entered such an agreement. PECO argues that only an "eligible member" may enter into an agreement — once it does so, it becomes a "participant," and a "participant" cannot enter an agreement. Thus, once the plaintiffs entered into two-year agreements, they ceased being "eligible members" and became "participants." No longer being "eligible members," they could not then enter into the five-year agreement.

that the provision applies to two-year agreements only, and the master agreement would remain in full force and effect while the former two-year participant exercised its right to enter into the remainder of the five-year arrangement. Likewise, the fact that, pursuant to paragraph 5(b), PECO may offer the former two-year participants further service under newly negotiated terms does not mean that such former participants may not elect the remainder of the five-year agreement instead.

Regarding PECO's argument that a two-year participant cannot become a five-year participant because it would miss the date by which a price election had to be made under paragraph 7.2 of the five-year agreement, the plaintiffs contend, with some force, that that deadline would also be missed by any eligible member that chose to enter into a five-year arrangement later than February 28, 2000, an option available under the master agreement. Thus, the election date set forth in that paragraph 7.2 cannot have the significance posited by PECO. Finally, the plaintiffs resist PECO's contention that the agreements interpreted in the manner sought by the plaintiffs lack business sense, observing that those who choose the two-year term followed by the remainder of the five-year term pay a price for their choice in the form of higher prices during the period of the two-year arrangement. Accordingly, the plaintiffs conclude, resort to other provisions of the agreements proves nothing, and the issue is resolved by paragraph 1(a)(i) of the master agreement providing that an eligible member may enter into a five-year agreement at any time prior to six months before its expiration date (with no limitation that would exclude a former two-year participant).[14]

Neither party's interpretation of the contracts commends itself to us to the exclusion of the other. We therefore conclude that the agreements by themselves do not reveal an answer to

[14]The plaintiffs do not appear to address PECO's argument that only an "eligible member" may enter an agreement, and that an eligible member ceases to be such when it enters an agreement, then becoming a "participant." See note 13, *supra*. Nevertheless, we are not persuaded by PECO's proposition; we conclude that the parties would not have limited themselves to the use of this nomenclature to make a point of this significance.

the question at issue, if indeed there is one. This is the essence of ambiguity. Contract language is ambiguous "where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.*, 47 Mass. App. Ct. at 729, quoting from *Fashion House, Inc.* v. *K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989). Once the contract is determined to be ambiguous, the court is free to look to extrinsic evidence, *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973), in order to give a reasonable construction in light of the intentions of the parties at the time of formation of the contract. *Hubert* v. *Melrose-Wakefield Hosp. Assn.*, 40 Mass. App. Ct. 172, 177 (1996). When such evidence is considered, it may be that a logical answer consistent with the purposes of the agreements and the intentions of the parties will emerge.

We recognize, however, that this may be a question that the parties simply never considered. Should the trial court so determine, that does not frustrate a sensible resolution. "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts § 204 (1979). See *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 342 (1981). In these circumstances, the court does not base a decision upon evidence of prior negotiations or agreements,[15] although such evidence may be admitted as bearing on what may be reasonable. Restatement (Second) of Contracts § 204 comment e. "[W]here there is in fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process." *Id.*, comment d.

3. *Disposition.* The judgment is vacated. The case is remanded

---

[15]The court will presumably already have considered such evidence, if available, without success in an effort to identify the parties' intentions on the subject.

to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*