van Gestel, Allan, J.
This matter is before the Court on cross motions for summary judgment. The plaintiffs group, referred to here as “Rhodes/Napp,”[1] seeks partial summary judgment through Plaintiffs’ Motion for Summary Judgment of Liability on Counts I and II. Paper #60. The defendants, referred to here as “Copley/Teva,”[2] have cross moved for summary judgment through Defendants’ Cross Motion for Summary Judgment. Paper #62.

BACKGROUND

Rhodes/Napp has brought a relatively simple three-count complaint. Basically, Rhodes/Napp claims a breach of contract. It has added two trailer counts of breach of the implied covenant of fair dealing in connection with the contract and for violation of G.L.c. 93A in connection with the contract.
Copley/Teva has responded with a counterclaim for breach of the same contract and for disgorgement or restitution for unjust enrichment with regard to payments it made under the contract.
*356 The background between Rhodes/Napp and Copley/Teva relates to the marketing of a chemical compound called nabumetone that was developed for the treatment of inflammation. In the background was patent infringement litigation with SmithKline Bee-cham pic and GlaxoSmithKline pic (collectively “SKB”).
Effective January 1, 2000, Rhodes/Napp and Copley/Teva entered into a settlement agreement which is the agreement being sued on here. The agreement provides, among other things, for the termination of a nabumetone supply agreement between Rhodes/Napp and Copley/Teva, a payment of $15,500,000 from Copley/Teva to Rhodes/Napp, and a grant of certain rights from Copley/Teva to Rhodes/Napp concerning attorneys fees in the patent litigation with SKB. In addition, Copley/Teva granted Rhodes/Napp the right to share equally in the recovery of any damages award or settlement from a possible future suit against SKB.
The agreement included the following language which controls the present dispute:
In the event that the Copley Group, following final disposition, settlement or resolution of the Patent Action . . . institutes a lawsuit against SmithKline Beecham Corp. or Beecham Group pic (collectively “SKB”) alleging damages arising from fraudulent conduct in connection with the granting or defense of United States Patent No. 4,420,639 (“ ‘639 Patent”) (such action the “Fraud Action”), the Copley Group and Rhodes shall share equally in the proceeds of any damages award or settlement paid by SKB to the Copley Group and which directly results from the Fraud Action . . .
On August 14, 2001, the United States District Court entered a Memorandum of Findings of Fact and Conclusions of Law in the Patent Action. That Court held that the ‘639 Patent was invalid as anticipated by prior art and unenforceable because of SKB’s inequitable conduct before the United States Patent and Trademark Office (the “PTO”). The District Court then entered judgment in favor of Copley/Teva on August 15,2001.
On August 17, 2001, SKB filed a Notice of Appeal from the District Court’s judgment.
On December 17, 2001, Copley/Teva sued SKB, Beecham Group pic, and GlaxoSmithKline, pic. In this suit it was alleged that SKB had committed fraud on the PTO in connection with its procurement of the ‘639 Patent, and that its procurement and defense of the ‘639 Patent constituted a violation of the Sherman Act and contravened other state statutory and common-law requirements.
On October 23, 2002, the United States Court of Appeals for the Federal Circuit issued its opinion and mandate in the Patent Action. It affirmed the decision of the District Court with respect to the invalidity of the ‘639 Patent. As a result, the Appeals Court did not reach the issue of unenforceability.
On April 30, 2003, Copley/Teva and SKB entered into a settlement agreement relative to nabumetone, the ‘639 Patent, the Patent Action, and the Fraud Action. Under that settlement, Copley/Teva obtained consideration of (i) $3,200,000 in cash for attorneys fees incurred in the Patent Action and (ii) the North American rights to a separate pharmaceutical business, the drug “Purinethol.” In a press release dated July 29, 2003, Copley/Teva reported a “$100 million gain, before tax, resulting from the receipt of the North American rights to Purinethol from GlaxoSmithKline as a litigation settlement between Teva and GSK related to Nabumetone.”
Rhodes/Napp, in this suit, claims a 50% share in the Copley/Teva settlement with GlaxoSmithKline. Count I of the complaint is in breach of contract for failing “to provide plaintiffs with a portion of the recovery in the Antitrust Action to which plaintiffs are contractually entitled.” Complaint, para. 36. Count II of the complaint is for breach of the covenant of good faith and fair dealing because the “defendants have failed to share the antitrust recovery from SKB with plaintiffs.” Complaint, para. 39.
Count III of the complaint asserts violations of G.L.c. 93A, secs. 2 and 11 “by committing unfair or deceptive acts of trade or commerce by way of the conduct herein alleged.” Complaint, para. 43. Count III is not involved in the plaintiffs’ motion but is challenged in the defendants’ motion.
Copley/Teva has paid Rhodes/Napp $3,190,391.57, which it claims is more than should be due under the agreement.
Copley/Teva, in its counterclaim, alleges that it has overpaid Rhodes/Napp under the agreement and seeks to have Rhodes/Napp disgorge some, or all, of what it received from Copley/Teva.

DISCUSSION

Summary judgment is granted where, viewing the evidence in the light most favorable to the non-moving party, there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Cabot Corporation v. AVX Corporation, 448 Mass. 629, 636-37 (2007); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). “[T]he moving party must establish that there are no genuine issues of material fact, and that the non-moving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, of course, both sides are moving parties, a fact that may force the Court into drawing inferences *357 and assessing burdens differently depending upon which motion is in play.
Both sides agree that a key element in this case is the meaning of the phrase “final disposition ... of the Patent Action” as appearing in Article 9 of the settlement agreement set forth above. Both sides also argue with vigor that the phrase is unambiguous. That said, however, each side proffers a different meaning to the phrase; a meaning that suits that side for which the entity is advocating.
Khodes/Napp says “final disposition” means “final disposition of the Patent Action pending in the United States District Court for the District of Massachusetts [which] occurred in August 2001 when Judge Lindsay found the ‘639 Patent invalid and unenforceable and entered final judgment for Copley and Teva.” See Mem. in Supp. of Plaintiffs’ Mtn., at p. 7.
Copley/Teva says “final disposition” means “[s]uch a conclusive determination of the subject-matter that after the award, judgment, or decision is made nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon.” See Mem. in Supp. of Defendants’ Cross-Mtn., at p. 12. In short, Copley/Teva advocates for a reading that requires the conclusion of any appeal from Judge Lindsay’s judgment.
This Court must first determine whether the phrase “final disposition” is ambiguous or not. Can it be said that the phrase “is not ‘susceptible of more than one meaning,’ ” Prozinski v. Northeast Real Estate Services, LLC, 59 Mass.App.Ct. 599, 605 (2003), or must it be determined that neither “party’s interpretation of the [phrase] commends itself to [the Court] to the exclusion of the other.” President and Fellows of Harvard College v. PECO Energy Company, 57 Mass.App.Ct. 888, 895 (2003).[3]
“Contract language is ambiguous ‘where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.’ ” PECO Energy, supra 57 Mass.App.Ct. at 896. “However, ‘an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other’s.’ ” Suffolk Construction Company, Inc. v. Lonco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999).
Once the contract is determined to be ambiguous, the court is free to look to extrinsic evidence ... in order to give a reasonable construction in light of the intention of the parties at the time of formation of the contract. . . When such evidence is considered, it may be that a logical answer consistent with the purpose of the agreements and the intentions of the parties will emerge.
. . . [HJowever, . . . this may be a question that the parties simply never considered. Should the trial court so determine, that does not frustrate a sensible resolution. “When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court... In these circumstances, the court does not base a decision upon evidence of prior negotiations or agreements, although such evidence may be admitted as bearing on what may be reasonable. ”[W]here there is in fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process."
PECO Energy, supra, 57 Mass.App.Ct. at 896.
Not to be overlooked in the process, “[w]here knowledgeable and fully represented parties choose to embody their relationship in a carefully crafted document, negotiated over several months, they are entitled to and should be held to the language they chose.” Cabot Corporation, supra, 448 Mass. at 638.
It is not the role of the court to alter the parties’ agreement. “Even if it be found that the contract, according to its true meaning . . . fails to become operative, it is not for the court, in order to give it operation, to suppose a meaning which the parties have not expressed ...”
Rogaris v. Albert, 431 Mass. 833, 835 (2000).
To suggest that the forgoing provides a sure guide to clear sailing for this Court on the analysis that follows appears to be a stretch.
The Court begins, as it must, with a determination of whether the phrase “final disposition” when used by sophisticated attorneys to describe the conclusion of a law suit in a Federal District Court is ambiguous. It concludes that it is not. “(W]here [contractual] language is unambiguous, its interpretation is a question of law that may be resolved on a motion for summary judgment.” Cabot Corporation, supra, 448 Mass. at 640. See also Seaco Ins. Co. v. Barbosa 435 Mass. 772, 779 (2002); Mass. Mun. Wholesale Elec. Co. v. City of Springfield, 49 Mass.App.Ct. 108, 111 (2000).
The phrase “final disposition” when referring to a law suit means the final determination of the law suit. It is different from the phrase “final judgment.” The latter “means only the final adjudication of the rights of the parties at the trial level; judgment thus merely divides the stages of litigation.” Smith and Zobel, Rules Practice, 8 M.P.S. sec. 54.2. See also Brookshank v. Epstein, 5 Mass.App.Ct. 377, 378 (1977); Mass.R.Civ.P. Rule 54(a).
A final disposition includes more than a final judgment Thus, the Patent Action here was neither disposed, nor resolved, when Judge Lindsay entered his final judgment. There having been a timely appeal to *358 the Federal Circuit, the Patent Action remained until that appeal was resolved.
Before getting to the consequence of the ruling just made, the Court, recognizing the potential for error in its determination that the phrase is not ambiguous, addresses the issue as if the phraseology “final disposition” can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken, as suggested in PECO Energy, supra, 57 Mass.App.Ct. at 896. In doing so, the Court “is free to look to extrinsic evidence ... in order to give a reasonable construction in light of the intention of the parties at the time of formation of the contract.” Id. “When such evidence is considered, it may be that a logical answer consistent with the purpose of the agreement. . . will emerge.” Id.
Having done so, including, among other things, looking to the drafting histoiy of Art. 9, the other two words, “settlement” and “resolution,” included with “final disposition” in the phase in issue, and the fact that the other phrase “final judgment” is used elsewhere in the agreement, the Court comes to the same conclusion. Assuming for the sake of this assessment that “the parties to [the settlement agreement in issue] a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the Court.” Id. In this circumstance, this Court does “not base its decision upon evidence of prior negotiations or agreements, although such evidence [was considered] as bearing on what may be reasonable.” Id. Rather, “the Court . . . supplies] a term which comports with community standards of fairness.” Id. “Final disposition” in the agreement in issue means the final disposition of the Patent Action, including resolution of any appeal from the final judgment of the trial court.
Turning next to the plaintiffs’ G.L.c. 93A claim, the Court avoids, although it does not suggest weakness in, the defendants’ assertion that the “center of gravity of the circumstances that give rise to the claim” is not “primarily and substantially” within the Commonwealth of Massachusetts. As this Court well knows, Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (2003), stands for that proposition. At the same time, Kuwaiti Danish acknowledges that any “determination [of the locus of the center of gravity] necessarily will be fact intensive and unique to each case.” Id., at 472-73. Further, the Kuwaiti Danish court suggests following “an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire sec. 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.” Id. at 473. This sounds to this Court like some form of evidentiary hearing, rather than a motion for summary judgment.
The foregoing notwithstanding, what is absolutely clear is that Count III of the plaintiffs’ complaint, grounded in its totality on “the conduct [t]herein alleged,” complaint, para. 43, rests wholly on the claims for breach of contract and breach of the implied covenant of good faith and fair dealing. For the reasons stated above, however, neither breach exists. At most,
[t]his was an ordinary contract dispute without conduct that was unethical, immoral, oppressive, or unscrupulous . . . Not every unlawful act is automatically an unfair or deceptive one.
Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 505 (1997).
And here this Court has determined that there was not even a breach.

ORDER

For the foregoing reasons, Plaintiffs’ Motion for Summary Judgment of Liability on Counts I and II, Paper #60, is DENIED and Defendants’ Cross Motion for Summary Judgment, Paper #62, is ALLOWED.

The Court is aware that the corporate status of Napp has changed such that in some fashion it has become Purdue Pharma Technologies, Inc.; however, for purposes of the present memorandum and order, that change is of no consequence.

The Court also is aware that the corporate relationship between Copley and Teva has changed over the years; however, for purposes of the present memorandum and order, that change is of no consequence.

As these two cases reveal, this Court is not a stranger to this issue.