Lauriat, Peter M., J.
This action arises from an inter-generational family dispute regarding the terms of an Operating Agreement that controlled a limited liability company, 200 High LLC (“the LLC”), which owns the commercial real estate and building situated at 200 High Street in Boston. The matter is before the court on a motion to dismiss filed by defendants Elaine F. Gossels (“Elaine”) and Jerome F. Furman (“Jerome”) (collectively, the “defendants”) and on a motion for partial summary judgment filed by plaintiffs Rebecca Austin Furman (“Rebecca”), Alissa Furman McGreen, Kayla Rose Furman and Caroline Davita Furman (collectively, the “plaintiffs”). For the following reasons, the plaintiffs’ motion is allowed, and the defendants’ motion is denied.
BACKGROUND
The record before the court reveals the following facts. 200 High LLC is a Massachusetts limited liability company that owns commercial real estate in downtown Boston. On July 16, 2008, Elaine, Jerome, and their brother, Walter Furman (“Walter”) executed an Operating Agreement setting forth the terms and conditions governing the LLC. Although the Operating Agreement does not define “Member," it states that “The Members are listed on Exhibit A, which is attached hereto and made a part hereof. Exhibit A shall reflect the capital contribution of each Member . . . and each Member’s percentage ownership in the Company." Operating Agreement, §3.1. Elaine, Jerome and Walter are the sole Members listed on Exhibit A, with each holding a one-third ownership interest (33.3%) in the LLC.
The Operating Agreement also specifically provides that: “Only descendents [sic] by blood or adoption of Anne Shapiro Furman and Jacob Furman shall be Members.” Operating Agreement, §3.5 (emphasis in original). Anne and Jacob Furman were the parents of Elaine, Jerome and Walter. Elaine was designated the manager, with accompanying responsibilities and obligations.
Section 6.1, of the Operating Agreement, entitled “Restriction On Transfer," provides for the transfer of a Member’s ownership interest as follows:
Any Member shall have the right to Transfer the whole or any part of her or his interest in the Company to (1) any other Member(s); to (2) one or more of any descendant by blood or adoption of Anne Shapiro Furman and Jacob Furman (“Descendants”); or to (3) a trust all of the beneficial interests of which are owned by one or more Member(s) or Descendant(s) and the Trustee(s) of which is (are) a Member(s) or (4) an LLC all of the beneficial interests of which are owned by one or more Member(s) or Descendant(s) and the Managers) of which is (are) Member(s) . . . Any Transfer to any other person (“Impermissible Person”) shall cause the ownership interest of the Assignor to be subject to the purchase rights of the Company pursuant to the provisions of Section 6.6 below.
Section 6.6 provides, in pertinent part, that
In the event that ... an Impermissible Person becomes the holder of a Member’s economic interest, the Company may, at its option, purchase from such impermissible Person at any time while the Impermissible Person is such a holder, all or any part of the interest held by the . . . Impermissible Person at the Purchase Price set forth below.
The parties do not dispute that the Purchase Price was to be calculated based on a specified formula and discounted by twenty percent.
Walter died on January 25,2010, leaving his estate, including his interest in the LLC, to The Shenfeld-Fur-man Revocable Family Trust (the “Family Trust”). Under the terms of the Family Trust, by an instrument dated March 23, 2010, Walter’s wife, Miriam, disclaimed any interest in the LLC retroactive to the date of Walter’s death, thus accelerating the Family Trust’s succeeding interests.[1] The effect of the disclaimer was to transfer Walter’s interest in the LLC to an inter vivos sub-trust, entitled the Children’s Trust, which, under Art. 2, §2.7 of the Family Trust, became irrevocable upon his death. On that same day, Miriam also declined to act as the trustee of the Children’s Trust and appointed Walter’s daughter, Rebecca, as trustee. Ar- *366 tide 10 of the Children’s Trust reads, in pertinent part, that:
All property in the Children’s Trust, and any property added to the Children’s Trust, shall be divided, by right of representation, into separate trust shares, one (1) for each of the Settlor’s then living children, and one (1) collectively for each group composed of the then living issue of a deceased child of the Settlors . . . Each share so established shall be held in trust as provided in this Article 10 . . . [and] shall be a separate trust for all purposes, and shall be named for its current beneficiary.
The trust instrument provides that a trustee has the discretion, under certain conditions and restrictions not relevant here, to make distributions of income or principal at any time. It further provides that, after the trust has been established and administered for at least eighteen months, the following provision shall apply:
When the current beneficiary is or attains age thirty (30), one-fourth (1/4) of the then current principal of the beneficiary’s trust shall be distributed to the beneficiary. When the current beneficiary is or attains age thirty-five (35), the balance of the beneficiary’s trust shall be distributed to the beneficiary, and the beneficiary’s trust shall thereupon terminate.[2]
On March 26, 2010, Elaine, acting on behalf of herself and Jerome, sent Miriam a written notice exercising the LLC’s option to buy Walter’s interest in the LLC for a purchase price based on the contractual formula discounted by twenty percent, on the ground that his interest had been transferred to an Impermissible Person as defined in the Option Agreement. Miriam notified Elaine that Miriam was not the owner of any interest in the LLC, and that the interest was now held by Rebecca as trustee of the Children’s Trust. Elaine on April 5, 2010, sent to Rebecca a new Notice of Exercise to Purchase Right purporting to compel the sale of Walter’s interest, on the ground that neither Elaine nor Jerome were trustees of the Children’s Trust and therefore the trust was an Impermissible Person.
Rebecca on April 15, 2010, rejected the notice, claiming that the defendants’ efforts to compel the sale of Walter’s interest violated the Operating Agreement. The plaintiffs filed this action on April 21, 2010, asserting claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), breach of fiduciary duty (Count III), specific performance (Count IV), declaratory judgment (Count V), and accounting (Count VI). The defendants have now moved to dismiss the complaint in its entirety. The plaintiffs have moved for summary judgment on Count v. of their complaint, seeking a declaration that Rebecca, as trustee of the Children’s Trust, owns Walter’s interest in the LLC, and that as such, she is an Impermissible Person under the terms of the LLC.
DISCUSSION
While the defendants have filed a motion to dismiss, the plaintiffs have filed a motion for partial summary judgment, the outcome of which will determine the rights of the parties. The court has considered materials outside the complaint submitted by both parties, and will therefore treat the defendants’ motion as one for summary judgment under Mass.R.Civ.P. 56. See Mass.R.Civ.P. 12 (b); Gomes v. Metropolitan Prop. & Cas. Ins. Co., 45 Mass.App.Ct. 27, 32 (1998). Under the familiar standard, a court will grant summary judgment where the evidence offered, viewed in the light most favorable to the non-moving party, establishes all material facts as undisputed, and those facts indicate that the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). “The moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
The thrust of the defendants’ argument is that under the unambiguous language of the Operating Agreement, the Children’s Trust is an “Impermissible Person.’’ They point to §6.1(3) which provides that a Member can transfer his or her interest to a trust only if the beneficiaries of that trust are Members or descendants and only if the trustee is a Member of the LLC. There is no dispute that the beneficiaries of the Children’s Trust are descendants. However the defendants assert that although the trustee, Rebecca, is a descendant, she is not a Member, thus triggering the LLC’s option to purchase under §§6.1 and 6.6. They have done nothing, they contend, but assert their contractual right.
The plaintiffs, for their part, first take the position that upon Walter’s death, full legal title to his interest in the LLC passed to Rebecca, as trustee of the Children’s Trust. Therefore, at that time she became a Member of the LLC, satisfying the conditions of §6.1. Additionally, they contend that because Walter’s interest passed to Rebecca (and her sisters) as beneficiaries of the Children’s Trust, all his children thereby became Members. Even were the court to conclude otherwise, the plaintiffs point to correspondence between Elaine and Walter, beginning in 2004 in connection with converting the company from a limited partnership to an LLC, as well as drafts of the Option Agreement, that indicate the parties’ clear wish that all their descendants become owners of the LLC. To deprive them of their rightful inheritance, the plaintiffs claim, cuts against both the history of the ownership arrangement for the property and the siblings’ intentions.
*367 The Operating Agreement is a contract, and the principal guide to contract interpretation is, of course, the language of the contract itself. “Words that are plain and free from ambiguity must be construed in their usual and ordinary sense.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998); Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995). Whether a contract is ambiguous is a question of law for the court. Bank v. Thermo Elemental, Inc., 451 Mass. 638, 648 (2008). That the parties may disagree on the meaning of a contract does not in itself create ambiguity. Citation Ins. Co., 426 Mass. at 381. In determining ambiguity, the court must first look to the language of the contract itself, independent of any extrinsic evidence regarding the drafting history or the intent of the parties. Thermo Elemental, 451 Mass. at 648. “Contract language is ambiguous where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.” Id., quoting President & Fellows of Harvard Coll. v. PECO Energy Co., 57 Mass.App.Ct. 888, 896 (2003) (internal quotations omitted). Only after the court concludes that a contract is ambiguous may it consider extrinsic evidence. Thermo Elemental, 451 Mass. at 649.
As a threshold matter, although the Operating Agreement does not specifically define “Member,” where the Members are listed on Exhibit A to the agreement reflecting each one’s percentage ownership in the LLC, the court concludes that a person who possesses an ownership interest in the LLC is a Member. In addition, the Operating Agreement clearly prohibits any persons from being Members other than the descendants of Anne and Jacob Furman, whether by blood or adoption. That a Member may or may not be listed on Exhibit A is not dispositive and, in any event, the manager is responsible for maintaining “a list of all current Members.” The question before the court, therefore, is whether Rebecca, as a result of Walter’s death and Miriam’s disclaimer, holds an ownership interest in the LLC and is therefore a Member, fulfilling the requirements of §6.1(3). The court concludes that she is.
A trustee of a trust holds the legal title to the trust property with the power to administer it for the benefit of the beneficiaries, in accordance with the terms of the trust instrument. Welch v. Davidson, 102 F.2d 100, 102 (1st Cir. 1939). A beneficiary, on the other hand, is the owner of the trust res, has an equitable interest in the trust property, and is considered the real owner. Id. See also Reardon v. Reardon, 192 Mass. 448, 451 (1906) (beneficiary had complete equitable interest in trust property which he could devise); Ames v. Ames, 244 Mass. 381, 389 (1923) (same); Lauricella v. Lauricella, 409 Mass. 211, 219 (1991) (husband’s beneficial interest in trust property part of marital estate and subject to equitable division in divorce action). See also Senior v. Braden, 295 U.S. 422, 433 (1935) (beneficiary of trust had “recognized fixed right to the present enjoyment of the estate, with a right to the corpus itself when he reached the age of fifty-five. His estate in the property thus in the possession of the trustee, for his benefit, though defeasible, was alienable to the same extent as though in his own possession and passed by deed”).[3]
Here, once Miriam disclaimed ownership of Walter’s interest in the LLC then by acceleration under the terms of the Family Trust, ownership was allocated to the Children’s Trust. Rebecca and her siblings, as the beneficiaries of the Children’s Trust, therefore held an equitable interest in the trust property and became the real owners. The court concludes that because Rebecca holds an ownership interest in the LLC, she is a Member of the LLC. Therefore the Children’s Trust is not an Impermissible Person and Walter’s interest in the LLC was properly transferred and not subject to an option to purchase.
ORDER
For the forgoing reasons, the Plaintiffs’ Motion for Partial Summary Judgment on Count v. of their complaint is ALLOWED. The Plaintiffs are entitled to declaratory judgment that, as a beneficiary of the Children’s Trust, Rebecca Austin Furman has equitable ownership of Walter Furman’s interest in the LLC. For the same reasons, the Defendants’ Motion to Dismiss, treated as one for summary judgment, is DENIED.

The pertinent provision reads: “In general, a disclaimer ... of a property interest shall accelerate the succeeding interest . . . any interest in property so disclaimed shall be allocated or distributed as if the beneficiary had predeceased the person from whom the interest would have been received.” The Family Trust, Art. 12, §12.2

Alissa is thirty-seven, Rebecca is thirty-three, Caroline is twenty-three and Kayla is twenty.

The court has applied Massachusetts law. However, it notes that while the Operating Agreement is governed by Massachusetts law, both the Family Trust and the Children’s Trust are governed by the laws of California. Even were the court to apply California law to the terms of the trusts, the result would be the same. In Steinhart v. County of Los Angeles, 223 P.3d 57, 1320 (2010), the Supreme Court of California held that where, upon the death of the settlor, the trust became irrevocable, “the entire equitable estate . . . which [the settlor] had held in her lifetime, transferred from [the settlor]... to the beneficiaries of the irrevocable trust.. . In other words, upon [the settlor’s] death, real ownership of the residence . . . transferred from [the settlor] to [the beneficiaries] of the irrevocable trust." [Emphasis in original.]