The defendants, Charles Najda and Andrew Najda (the Najdas), appeal from a judgment entered on a jury verdict that found them liable to the plaintiff for breach of contract, breach of fiduciary duty, and negligent misrepresentation. The Najdas also appeal from the denial of their motion for judgment notwithstanding the verdict. We affirm.
Viewing the evidence in the light most favorable to the plaintiff, the jury could have found the following. Nikolaos Paterakis heard about the Najdas through a mutual acquaintance, Rosa Nader, after he told Nader that he was interested in finding new business opportunities. The Najdas proposed that they form a hedge fund management company, and wooed Paterakis by showing him the expensive house in Concord in which they resided, and by representing that Charles Najda had developed an effective financial trading algorithm. The Najdas, however, never intended to run a legitimate business, planning instead to live a lavish lifestyle fueled by Paterakis's investment. The algorithm also did not work as well as was claimed. After negotiations, the parties signed a "Formation Agreement." Paterakis agreed to invest $500,000 in the business, with $150,000 to be used for salaries, $50,000 for expenses, and $300,000 for trading, in order to develop a track record utilizing the trading algorithm. The parties also executed a "Business Plan," which provided further details, and organized their business, Monument Street Capital Management LLC (MSCM), which they registered in Anguilla. Paterakis invested his $500,000 on October 7, 2010.
MSCM was not successful. Its book of accounts shows that, between December of 2010 and March of 2012, it had total inflows of slightly under $550,000-which includes Paterakis's $500,000 investment-and expenditures of around $620,000. These expenditures were for a combination of salary payments to Andrew Najda and "firm expenses." By the time the present action was filed a year after Paterakis's initial investment, MSCM's bank balance was around $23,000. Under Paterakis's theory, this rapid decline in MSCM's value resulted from the Najdas' wrongful use of corporate assets for their personal benefit, which they had intended to do from the beginning.
Discussion. We address each of the Najdas' arguments in turn.
Their strongest argument, which ultimately fails, is that the breach of fiduciary duty claim was incorrectly brought as a direct action when it should have been brought derivatively. In this case, Paterakis's breach of fiduciary duty claim is essentially that the Najdas wrongfully diverted MSCM's funds for their personal use. Under standard corporate law principles, claims that managers harmed the corporation must be brought derivatively. See Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C., 405 Mass. 506, 513 (1989). Breach of fiduciary claims may be brought in a direct action only if "[i]t would be difficult for the plaintiff ... to establish breach of fiduciary duty owed to the corporation." Bessette v. Bessette, 385 Mass. 806, 809 (1982), quoting from Donahue v. Rodd Electrotype Co., 367 Mass. 578, 589 n.14 (1975). Here, Paterakis would have had no trouble establishing that the Najdas, if they wrongfully took almost all of MSCM's assets for their own personal use, breached a fiduciary duty owed to MSCM.
Assuming without deciding that the same principles apply with equal force to this closely-held limited liability company in which there are only three members-two of whom were the managers of the company and are the defendants-and that therefore the breach of fiduciary duty claim should have been brought derivatively, the Najdas have shown no prejudice from the error. The jury were instructed that, if Paterakis were to prevail on his breach of fiduciary duty claim, his recovery would be equal to "his proportionate share of the moneys [that] ... the party against whom the claim is brought diverted to himself or others improperly." In other words, the judge instructed the jury to divide by three any amount they found the Najdas wrongfully took, each party being a one-third owner of MSCM, and distribute that one-third to Paterakis. The Najdas argue that if this had been brought as a derivative claim, damages (presumably three times the amount of the $77,000 which was awarded to Paterakis on this claim) would go to MSCM, the assets of which could only be distributed pro rata to members upon dissolution after first paying creditors. But, because the method of calculating damages used by the jury instructions leaves the Najdas with at least the same amount of money that they would have had under a derivative action, they can claim no prejudice.
Contrary to the Najdas' argument, the breach of contract claim was properly brought directly because the contract was between the parties as individuals and antedated the creation of MSCM. See Tracy v. Curtis, 10 Mass. App. Ct. 10, 25 (1980) (shareholders may bring direct claims against managers in their individual capacities when claims do not derive from corporate relationship and damages are sought against managers in their individual capacities).
The Najdas next claim that there was insufficient evidence to establish damages. This claim is not meritorious. If the Najdas wrongfully took MSCM's funds for their own use, it is immaterial whether MSCM grew in value. Thus, it was not necessary to determine the final value of MSCM in order to award damages. Even if it were, there is evidence that, when the action was filed, MSCM had cash on hand of about $23,000, which gave the jury some sense of its value.
The Najdas also argue that there was no breach of contract or fiduciary duty before MSCM was formed. As there was no requirement that these breaches occur before the formation of the company, and the jury were not instructed that there was any such requirement, this claim is without merit.
Next, the Najdas argue that the damages awards were duplicative. The jury awarded damages as follows: $116,000 for breach of contract, $50,000 for negligent misrepresentations, and $77,000 for breach of fiduciary duty.[3] A court must uphold a damages award against a challenge of duplication "if, by any line of reasoning, the jury might have made a correct assessment of damages." Simon v. Solomon, 385 Mass. 91, 107 (1982). The $116,000 breach of contract damages, as the Najdas contend, could have represented Paterakis's one-third share of his investment into the trading account, plus what was earned on it. Although it is possible that the $50,000 negligent misrepresentation award included part of this amount, this inference is not "inescapabl[e]," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 108, particularly in light of the $77,000 in breach of fiduciary duty damages, and in light of the Formation Agreement's specific allocation of $50,000 to nonsalary expenses. In addition, since the jury could have made a total award of over $300,000, we cannot conclude that the substantially smaller overall award "inescapably" resulted from the duplication of damages.[4]
The Najdas next argue that there was insufficient evidence of negligent misrepresentation. We disagree. To the extent they argue that one cannot negligently misrepresent a present intention of future conduct, the law is (as the Najdas acknowledge) to the contrary. See Cumis Ins. Soc., Inc. v. B.J.'s Wholesale Club, Inc., 455 Mass. 458, 474 (2009). In any event, the jury need not have relied on any statements made by the defendants about future conduct. The jury could have relied upon statements that the Najdas would abide by the Formation Agreement and the Business Plan, or that the trading algorithm had been tested and was working well. There was evidence that Paterakis's reliance on those statements was reasonable.[5]
The Najdas further argue that the jury should have been instructed to supply two purportedly missing terms from the Formation Agreement: (1) how long the $200,000 allocated for expenses was supposed to last, and (2) who had the authority to allocate MSCM's resources for its operating needs. See President & Fellows of Harvard College v. Peco Energy Co., 57 Mass. App. Ct. 888, 896 (2003) (when essential term is missing, court must supply one that is reasonable in the circumstances). The first missing term is not an essential term for purposes of this case because, so long as the funds in the trading account were not supposed to be used for salaries and expenses, it is immaterial how long the $200,000 expense account was supposed to last. As to the second missing term, it is clear that the managers-that is, the Najdas-had the authority to allocate resources for MSCM's operating needs. The jury verdict indicates that they did not do so lawfully.
Even assuming that the Najdas' next argument is preserved-that the agreement creating MSCM superseded the Formation Agreement with respect to the managers' powers-it is without merit. Whatever the powers of the managers were under the MSCM agreement, the Najdas were nevertheless bound to comply with the terms of the earlier contract, the Formation Agreement.
The claim that the jury should not have been told that the plaintiff lost all his money was not preserved in the motion for judgment notwithstanding the verdict. In any event, in the instruction to which the Najdas point, the judge was simply describing to the jury what the plaintiff alleged, not instructing the jury that it was true.
The Najdas further argue that repeated testimony concerning their house in Concord should not have been allowed on grounds that its probative value was substantially outweighed by undue prejudice. Even assuming that this issue was preserved for our review, there was no error. It is undisputed that the Najdas operated the business from the Concord house; the plaintiff was thus entitled to elicit evidence as to its value, its furnishings, and as to expenditures made by the Najdas on the house during the period of the plaintiff's involvement with the business. In any event, the Najdas objected at trial only once to any of this testimony. That single mention of the house was not unduly prejudicial.
Finally, the Najdas argue that they were unable to put on a proper defense because they were diverted by what they describe as "misconduct": the plaintiff claiming that the trading account investment was not an investment in the company, that Andrew Najda's wife had an operational role with MSCM and made representations to the plaintiff, and that MSCM was never properly formed. However, the Najdas point to no evidence that supports their characterization of these acts as misconduct, nor do they point to any evidence that these assertions diverted their attention from actually defending the case.[6]
Judgment affirmed.
Order denying motion for judgment notwithstanding the verdict affirmed.

The jury found Andrew Najda and Charles Najda separately liable on the negligent misrepresentation and breach of fiduciary duty claims, i.e., each was liable for $25,000 on the negligent misrepresentation claim and for $38,500 on the breach of fiduciary duty claim. After the verdicts were rendered, the jury were polled and stated that their intention was to make separate awards in those amounts.

The related claim that the jury should have been instructed that they could not award duplicative damages falls with the substantive claim on duplicative damages. Even if not giving the instruction were a preserved claim of error, it was prejudicial only if the jury nonetheless did award such damages.

For the same reason, to the extent the Najdas claim that there cannot be a negligent misrepresentation about a company that does not exist, and to the extent that claim is preserved, even assuming there is some such rule, something we need not address, it is without merit.

To the extent they are not addressed in our decision, we decline to consider the following arguments because they were not properly preserved below or are raised for the first time on appeal: that the plaintiff repackaged a contract claim as a tort claim; that, under the agreement that formed MSCM, there was no liability for breach of fiduciary duty; that the finding of liability and judgment for breach of fiduciary duty should be vacated because the managers had a legitimate business purpose; that Anguillan law should have been applied under the internal affairs doctrine; that the judge erred in instructing the jury that the Formation Agreement was the operative agreement; and that it was integrated.